```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
------------------------------x
                              :
TIM DAVIS                     :    Civ. No. 3:20CV01822(SALM)
                              :
v.                            :
                              :
RUMSEY HALL SCHOOL, INC.      :    July 18, 2022
                              :
------------------------------x
```

**ORDER DENYING DEFENDANT'S MOTION TO COMPEL [Doc. #46]**

Defendant Rumsey Hall School, Inc. ("defendant" or "Rumsey Hall") has filed a motion seeking to compel plaintiff, Tim Davis ("plaintiff"), to pay defendant's expert's cancellation fee. See Doc. #46. For the reasons stated herein, the Motion to Compel [**Doc. #46**] is **DENIED**.

**I.   BACKGROUND**

   **A.   Procedural History**

Plaintiff brought this action on December 8, 2020, asserting four claims: (1) Negligence; (2) Negligent Infliction of Emotional Distress; (3) Recklessness; and (4) Intentional Infliction of Emotional Distress. See Doc. #1 at 2-11. Plaintiff alleges that he was "sexually abused, assaulted and exploited" by the Dean of Students when he attended Rumsey Hall. Id. at 4.

On November 17, 2022, defendant filed a Motion for Mental Examination of the Plaintiff, seeking to have plaintiff examined by defendant's expert, Jane McNaught, Ph.D., at her office on

1

December 30, 2021. See Doc. #31 at 1-2. On December 1, 2021, the Court conducted a telephonic status conference with counsel for both parties, at which plaintiff informed the Court that he did not object to the mental examination, as long as it was conducted virtually, rather than in-person at Dr. McNaught's office. See Doc. #34. On that same date, the Court terminated defendant's Motion for Mental Examination. See id.

On December 2, 2021, defendant filed an Amended Motion for Mental Examination of the Plaintiff, changing the location of the examination to "Virtual via Zoom or other similar remote proceeding[,]" but retaining the date of December 30, 2021. Doc. #35 at 2. On that same date, the Court granted defendant's motion, absent objection. See Doc. #36.

On January 5, 2022, defendant filed an Amended Motion for Mental Examination of the Plaintiff, changing the date to February 21, 2022. See Doc. #39 at 2. On January 10, 2022, the parties submitted a Joint Status Report stating:

> The court granted, absent objection, the defendant's motion for mental examination of the plaintiff on December 2, 2021 (See CM/ECF No. 35 and 36). The examination was scheduled for December 30, 2021. On the afternoon of December 28, 2021, plaintiff's counsel's office cancelled that examination and asked that it be rescheduled on a Monday in February.
>
> An amended motion for mental examination was filed on January 6, 2021 (MC/ECF No. 39). The examination is currently scheduled for Monday, February 21, 2022.

Doc. #40 at 2. On January 13, 2022, the Court conducted a telephonic status conference with counsel for both parties, and granted defendant's Amended Motion for Mental Examination of the Plaintiff. See Doc. #41.

On March 4, 2022, defendant filed the instant motion to compel the payment of Dr. McNaught's cancellation fee. See Doc. #46. On March 25, 2022, plaintiff filed an opposition to defendant's motion to compel. See Doc. #50.

B. **Cancellation Timeline**

The following timeline is derived from defendant's motion to compel (Doc. #46), plaintiff's objection (Doc. #50), and the exhibits attached thereto.

On November 17, 2021, defendant[1] emailed plaintiff, stating that defendant "filed a motion for examination of the plaintiff by Jane McNaught, Ph.D.[,]" and "proposed dates for the examination that work for Dr. McNaught, but" were "amenable to another mutually agreeable date for the examination." Doc. #46 at 10. On November 22, 2021, plaintiff responded with an agreeable date of "December 30, 2021 but via zoom." Id.

On December 1, 2021, defendant emailed plaintiff a proposed amended motion for mental examination, asking for "consent to it

---

[1] The record contains a significant amount of email traffic between the parties. References to plaintiff or defendant in the context of the email traffic, as here, include emails from both counsel and their support staff.

3

being filed as is[.]" Id. at 11. Plaintiff responded: "No objection[.]" Id. On December 2, 2021, that motion was filed, see Doc. #35, and granted. See Doc. #36. With respect to the "Manner/Scope[,]" that motion stated: "Psychological examination and interview and psychological testing; Zoom link or other similar link for remote proceedings to be provided." Doc. #35 at 2.

The following day, December 3, 2021, plaintiff emailed defendant:

> Can you kindly advise as to what, specifically, will be included in the "psychological examination and interview and psychological testing" under the "Manner/Scope" section of the Amended Motion for Mental Examination (attached for reference)? Please let us know what exact tests your expert intends to administer and any other specifics of the examination she intends to conduct.

Doc. #46 at 12. On December 13, 2021, having apparently received no response, plaintiff followed up by forwarding that email to defendant, and stating: "Can you please advise as to the below? We will be unable to proceed with the examination without this information." Id.

"On December 16, 2021, defense counsel informed plaintiff's counsel that he would be in touch regarding Dr. McNaught's examination." Id. at 3, 14. On December 22, 2021, plaintiff emailed defendant: "In your 12/16/2021 email, you let us know that you would be in touch regarding Dr. McNaught's examination.

4

Can you please update us ASAP? Our position remains that we cannot go forward without this information." Id. at 14.

On December 23, 2021, at 11:10 a.m., defendant emailed plaintiff with a list of "tests that Dr. McNaught may administer during her examination[,]" and asking: "Can you please provide [plaintiff's] email address as she may need to send him with certain items." Id. at 15 (sic). On December 28, 2021, at 12:38 p.m., plaintiff emailed defendant:

> Thank you for this information. Unfortunately, we will have to ask on behalf of our client for this examination to be rescheduled. Our client generally has availability on Mondays -- please let us know if there is a date in February that works for Dr. McNaught's schedule.
>
> If you can please also clarify which "certain items" Dr. McNaught will need to send to our client, this would be appreciated, as we would like to provide him with additional clarification as to what this involves.

Id. at 16.

On December 29, 2021, the parties exchanged multiple emails throughout the day. At 10:43 a.m., defendant stated: "We got your message and forwarded it to Dr. McNaught right away. She just returned yesterday evening from holiday travel. She has a $4,000 cancellation fee. Please confirm that you'll pay this fee or let us know if you'd like to proceed tomorrow morning." Id. at 17. At 11:35 a.m., defendant responded: "The cancellation fee (disclosed to us now for the first time) is between you and your expert. It is not the plaintiff's responsibility, especially

5

because the postponement of the evaluation is due to your expert's and your failure to timely respond to our December 3 request for information." Id. at 18. At 12:28 p.m., defendant responded expressing his disagreement, and stating:

> On Dec 1 you reviewed our Motion and agreed to its contents (including the date and the parameters of the Mental Examination) which was granted on Dec 2. Judge Merriam also confirmed that you had no objection to the mental examination during our Dec 1 status conference and had previously ordered that any objection to our Nov 17 Motion for Mental Examination (duplicate in all regards except for the date) be filed by by Dec 1. Yesterday afternoon your office requested "on behalf of [y]our client" to reschedule the examination during any Monday in February that works for Dr. Mc Naught. There was no indication of Mr. Davis had suddenly become unavailable. Your office's Dec 3 request for information, that we responded to as a courtesy as soon as we obtained the answer, simply has nothing to do with why Mr. Davis became unavailable yesterday afternoon for the date he had chosen a month ago. Under these circumstances, I can understand why Dr. McNaught would enforce her cancellation fee for tomorrow's loss of a full day. It would certainly be preferable to simply go forward as scheduled than to have to litigate this topic.

Doc. #50-6 at 4 (sic). At 12:49 p.m., plaintiff confirmed that he would not be proceeding with the examination, stating:

> Our frequent emails since the initial December 3 request stated very clearly that in the absence of a timely reply we would not go forward with the evaluation. You well-know the vulnerable nature of the plaintiff in this case. Our request was timely and reasonable. The three-week delay in responding to it was not.

Id. at 3. Defendant responded:

> Okay, but frankly you still haven't told us why your office's learning last week of the potential tests caused [plaintiff] to, yesterday afternoon, need to postpone the examination from tomorrow until February.

6

> I don't understand your oblique reference to his vulnerable nature. We will provide you with the cancellation invoice of Dr. McNaught whenever we receive that and will endeavor to reschedule the examination for a Monday during February as your office requested. Thank you.

Id. Plaintiff then responded:

> [Plaintiff] requires at least moderate advance notice and time to process and prepare for any event that causes him to have to re-live and remember and explain the abuse he suffered at Rumsey Hall. His distress was pretty apparent during your interview of him, I thought. And his condition was made known to you through Dr. Ford's report and deposition. It should not be a surprise that he would need to know what tests your expert planned to subject him to, particularly since we requested advance notice in at least three emails.
>
> I have no intention of paying your expert's invoice, so there is no point in you sending it to me.
>
> Depending on how you decide to proceed, you may want to prepare for invoices coming your way for exceeding the time allotted by the federal rules for Dr. Ford's deposition and his and my time in this case and in Miranda v. Westover. You will recall that I allowed you to exceed your allowed hours and to bring us all back for a second day of questioning as a courtesy, and notwithstanding that (as I expect Judge Merriam will agree) the first day of questioning in each case was not a model of efficiency. You did not give me any advance notice of Dr. McNaught's purported $4000 "cancellation fee", so I imagine you'll have no objection to hearing about Dr. Ford's and my cancellation fees now.

Id. at 2. Plaintiff further stated: "Let's stop the back and forth. File something with the Court if that's what you decide and I'll respond to it." Id. Defendant agreed, see id., and no further emails regarding the cancellation are included with the parties' submissions.

7

## II.  DISCUSSION

Defendant now seeks an order "compelling the plaintiff ... to pay the cancellation fee of $4,000.00 issued by the defendant's expert, Jane McNaught, Ph.D., due to the plaintiff's cancellation of her examination two days before it was scheduled to go forward[.]" Doc. #46 at 1. Plaintiff responds that "it would be unfair in the extreme to assess a $4,000 penalty against the plaintiff." Doc. #50 at 9.

Defendant does not rely, in its motion, on any rule that it asserts would empower the Court to grant its motion, nor any law that would support its request. "Courts have inherent authority to sanction bad-faith conduct." Davis v. Saint Luke's-Roosevelt Hosp. Ctr., 771 F. App'x 116 (2d Cir. 2019). In addition, Rule 37 authorizes the Court to impose sanctions where a party fails to comply with a discovery order. See Fed. R. Civ. P. 37(b)(C). Although defendant does not use the word "sanction," as a practical matter, an award of the cancellation cost would be appropriately considered a sanction pursuant to Rule 37(b). See, e.g., Rachel-Smith v. FTData, Inc., 247 F. Supp. 2d 734, 739-40 (D. Md. 2003) (relying on Rule 37(b) to require plaintiff to pay a cancellation fee for failing to appear for the IME); Dinsbach v. Harris, No. 18CV03595(PHX)(GMS)(DMF), 2020 WL 5413753, at *5 (D. Ariz. Aug. 11, 2020), report and recommendation adopted, 2020 WL 5411341 (D. Ariz. Sept. 9, 2020) ("Pursuant to

8

either the court's inherent powers or Rule 37(b), district and circuit courts have imposed case terminating sanctions in some instances when parties failed to appear for or participate meaningfully in IPE's or IME's." (collecting cases)).

Rule 37 authorizes the Court to issue sanctions for parties that do not obey a discovery order, including orders made pursuant to Rule 35.[2] "If a party or a party's officer, director, or managing agent -- or a witness designated under Rule 30(b)(6) or 31(a)(4) -- fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A).[3] Rule 37(b)(2)(A)(i)-(vii) outlines examples of appropriate orders. See id. The Rule further provides that "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the

---

[2] Rule 37 sanctions serve the purpose of: "(1) obtaining compliance with discovery orders; (2) ensuring the disobedient party does not benefit from non-compliance; and (3) providing a general deterrent in the particular case and litigation in general." Nieves v. City of New York, 208 F.R.D. 531, 535 (S.D.N.Y. 2002) (collecting cases).

[3] Rule 35 provides: "The court where the action is pending may order a party whose mental ... condition ... is in controversy to submit to a ... mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1). Here, defendant's motion for mental examination of the plaintiff was brought pursuant to Rule 35. See Doc. #31 at 1; Doc. #35 at 1.

failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C) (emphasis added).

"Under Rule 37, conduct is substantially justified if there was a genuine dispute or if reasonable people could differ as to the appropriateness of the contested action." John Wiley & Sons, Inc. v. Book Dog Books, LLC, 298 F.R.D. 145, 148 (S.D.N.Y. 2014) (citation and quotation marks omitted) (defining "substantially justified" in the context of Rule 37(d) sanctions); see also, e.g., White v. City of Middletown, 45 F. Supp. 3d 195, 208 (D. Conn. 2014); Klein v. Torrey Point Grp., LLC, 979 F. Supp. 2d 417, 442 (S.D.N.Y. 2013); Underdog Trucking, L.L.C. v. Verizon Servs. Corp., 273 F.R.D. 372, 377 (S.D.N.Y. 2011).

It is undisputed that plaintiff canceled the mental examination scheduled for December 30, 2021, on December 28, 2021. See Doc. #46 at 4, 16; Doc. #50 at 5. Because the mental examination was canceled "[l]ess than one week" prior to the appointment date, Dr. McNaught's cancellation fee was the "[f]ull charge" of the appointment. Doc. #50 at 28. Dr. McNaught assessed a cancellation fee of $4,000.00. See, e.g., at 1.[4]

---

[4] The Court notes that a $4,000.00 fee might be unreasonable even if assessed after the examination were conducted. Dr. McNaught's hourly rate is $470.00, see Doc. #50 at 27, and the mental examination was scheduled for eight hours, including breaks. See Doc. #35 at 1. Thus, in the unlikely event that the examination took a full eight hours on December 30, 2021, the maximum fee

10

It is also undisputed, and indisputable, that the Court granted defendant's motion to compel the mental examination of plaintiff. See Doc. #36 ("ORDER granting, absent objection, 35 Amended Motion for Mental Examination of the Plaintiff. It is so ordered."). Thus, plaintiff's appearance at the mental examination was ordered by the Court, and subject to Rule 37 as an order made pursuant to Rule 35.

Defendant asserts that plaintiff is responsible for payment of the expert's cancellation fee because (1) plaintiff was provided with enough notice to decide to proceed with the IME and not incur the fee; (2) plaintiff did not object to the scope of the IME when he consented to the Amended Motion for Mental Examination (Doc. #35); and (3) defendant was not required by

---

would have been $3,760.00, that is, less than the $4,000.00 cancellation fee charged. This cancellation fee is effectively a "flat fee." "Flat fees are generally discouraged in the Second Circuit, as courts expect some reasonable relationship between the services rendered and the remuneration to which an expert is entitled. By its nature, a flat fee runs counter to this principle." Basilica v. Hawes, No. 3:14CV01806(JAM)(JGM), 2016 WL 6022766, at *3 (D. Conn. Oct. 14, 2016) (citation and quotation marks omitted); see also AP Links, LLC v. Russ, No. 09CV05437(JS)(AKT), 2015 WL 9050298, at *1 (E.D.N.Y. Dec. 15, 2015) ("[F]lat fees for expert appearances are 'disfavored' and are generally considered unreasonable."); Cottrell v. Bunn-O-Matic Corp., No. 3:12CV01559(WWE)(HBF), 2014 WL 1584455, at *2 (D. Conn. Apr. 21, 2014) (finding a $2,500 half day and $5,000 full day flat rate unreasonable). Defendant has offered no argument in support of the reasonableness of Dr. McNaught's flat fee. Thus, even if the Court found that compelling plaintiff to pay the cancellation fee was warranted, the Court would not award the flat fee sought.

Rule 35 to provide the list of specific tests that plaintiff requested. See Doc. #46 at 5-7. Plaintiff responds that (1) defendant was required to provide a list of the tests under Rule 35; (2) defendant ignored the December 3, 2021, request, and ultimately did not provide a list of the test until nearly three weeks later; (3) plaintiff was never informed of the $4,000.00 cancellation fee; and (4) the contract that resulted in the cancellation fee is between defendant's counsel and Dr. McNaught. See Doc. #50 at 2-9.

"[A] court considering sanctions can and should consider the equities involved before rendering a decision." Schlaifer Nance & Co. v. Est. of Warhol, 194 F.3d 323, 341 (2d Cir. 1999). Here, the Court finds that the equities do not weigh in favor of compelling plaintiff to pay the cancellation fee, and that plaintiff was "substantially justified" in deciding to cancel the mental examination.[5] Fed. R. Civ. P. 37(b)(C).

First, it was not unreasonable for plaintiff to seek further information regarding the scope of the mental examination. The amended motion to compel the mental examination of plaintiff provided only the following limited description:

---

[5] The Court notes the importance of complying with Court Orders generally, and emphasizes that a party seeking relief relating to a Court Order must file a motion pursuant to Local Rule 7. See D. Conn. L. Civ. R. 7.

"Psychological examination and interview and psychological testing[.]" Doc. #35 at 2. Notably, defendant did not object to plaintiff's request for information regarding the testing until it filed this motion to compel. See Doc. #46 at 5 ("There is no reason that plaintiff himself would have required, nor should he have had in his possession, the test information before going forward with the examination."). Even after being informed that plaintiff did not intend to proceed with the mental examination unless defendant provided a list of tests, defendant did not express any reluctance in providing the list. Thus, even if plaintiff were not entitled to a list of the tests to be performed at the mental examination,[6] it was not unreasonable for

---

[6] It is not clear whether a party is entitled to a list of specific tests to be performed at an independent medical examination. See, e.g., Ornelas v. S. Tire Mart, LLC, 292 F.R.D. 388, 398-99 (S.D. Tex. 2013) ("[T]his Court feels it more appropriate to order Defendant to submit to Plaintiff a list of those potential tests that will comprise the universe of tests that the examining physicians intend to conduct[.]" (citation and quotation marks omitted)); Hirschheimer v. Associated Metals & Mins. Corp., No. 94CV06155(JKF), 1995 WL 736901, at *4 (S.D.N.Y. Dec. 12, 1995) ("Some courts have allowed psychological testing that the physician deems appropriate without requiring that those tests be previously identified. However, requiring Mr. Hirschheimer to undergo unidentified testing would deprive him of the opportunity to seek an order precluding those tests that may be irrelevant to this litigation." (citation omitted)); but see, e.g., Reeder v. Butler Transp., Inc., No. 21CV00202(SMY), 2022 WL 1453367, at *2 (S.D. Ill. May 9, 2022) ("[T]he Court will not micro-manage how Dr. Kaplan performs his testing. The Court obviously expects Dr. Kaplan to act professionally and not submit Ms. Reeder to any unnecessary testing."); Tillman v. Masse Contracting Co., No. 06CV02480(KWR), 2006 WL 8456492, at *2 (E.D. La. Dec. 20, 2006)

13

plaintiff to believe that his request for that list was being considered and that there was no objection to it. Again, defendant's conduct in not objecting to the request until <u>after</u> the cancellation fee was imposed suggests that defendant also did not find plaintiff's request unreasonable.

Second, the timing of the significant events is particularly important here. Plaintiff requested a list of the tests to be performed on December 3, 2022, just one day after the motion to compel was filed and granted, and twenty-eight days before the mental examination was scheduled to take place. <u>See</u> Doc. #36; Doc. #46 at 12. While it might have been preferable for plaintiff to inquire about the tests prior to consenting to the motion, plaintiff provided defendant ample time to either respond or express its objection before the cancellation fee was incurred. Defendant did neither. Twenty-five days passed between plaintiff's original request for the list of tests on December 3, 2021, and his cancellation of the mental examination on December 28, 2021. Of those twenty-five

---

("Other courts have concluded that the tests to be administered is a determination best left to the suitably licensed examiner, not the Court."). The Court declines to resolve this question. Whether plaintiff was <u>actually</u> entitled to a list of specific tests is not relevant to the Court's analysis. Rather, the Court focuses on whether "reasonable people could differ as to" whether it was appropriate for plaintiff to cancel the examination due to the delay in receiving the list of specific tests. <u>John Wiley & Sons</u>, 298 F.R.D. at 148 (citation and quotation marks omitted).

14

days, twenty days are attributable to defendant's delay in obtaining the list of the test, and only five days are attributable to plaintiff's delay in canceling the examination. It is also noteworthy that the five-day delay between the production of the list of tests and plaintiff's cancellation occurred on a weekend over the Christmas holiday, and the Court was closed for four of those days, from December 23, 2021, through December 26, 2021.

Still, defendant maintains: "After being informed of the cancellation fee, plaintiff still had the opportunity to go forward with the examination in order to avoid incurring the fee." Doc. #46 at 1. While this may be accurate, defendant provided plaintiff with no meaningful opportunity to cancel the mental examination without incurring the fee. It is disingenuous, at best, to suggest that plaintiff was left with options. Dr. McNaught's contract states that the "[f]ull charge" applies when a cancellation is made "[l]ess than one week" prior to the appointment. Doc. #50-4 at 3. The mental examination was scheduled for on December 30, 2021, so plaintiff would have needed to cancel the mental examination December 23, 2021, to avoid the fee. Thus, by the time defendant provided plaintiff with the list of tests, only a few hours remained, on a Court holiday, for plaintiff to cancel the mental examination without

15

incurring the fee. See Doc. #46 at 15 (email from defendant with the list of tests dated December 23, 2021, at 11:10 a.m. EST).

Furthermore, defendant first informed plaintiff of the cancellation fee on December 29, 2021, after plaintiff requested cancellation of the mental examination. See Doc. #46 at 17. Defendant did not inform plaintiff of the cancellation fee, or the deadline, at any time during the month of December 2021, in response to any of plaintiff's inquiries, nor did defendant inform plaintiff of the deadline even on December 23, 2021, in the email in which the details of the tests were finally provided.

The Court finds that the equities do not weigh in favor of compelling plaintiff to pay a cancellation fee of which he had no notice. Accordingly, the Court declines to compel plaintiff to pay the $4,000.00 cancellation fee sought by defendant's expert.

### III. CONCLUSION

For the reasons set forth herein, defendant's motion to compel plaintiff to pay Dr. McNaught's cancellation fee [**Doc. #46**] is **DENIED**.

It is so ordered at Bridgeport, Connecticut, this 18th day of July, 2022.

                                    /s/
                                    HON. SARAH A. L. MERRIAM
                                    UNITED STATES DISTRICT JUDGE