## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TIM DAVIS, | ) | 3:20-CV-01822 (SVN) |
|    *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE RUMSEY HALL SCHOOL, INC, | ) | |
|    *Defendant*. | ) | July 10, 2023 |
| | ) | |
| | ) | |

## RULING AND ORDER ON PLAINTIFF'S MOTION TO COMPEL

Sarala V. Nagala, United States District Judge.

In this action, Plaintiff Tim Davis, who was a boarding student at Defendant The Rumsey Hall School from 1988 to 1992, claims he was sexually assaulted by the then-Dean of Students for Rumsey Hall, Robert McGrew.  He alleges causes of action for negligence, recklessness, and negligent and intentional infliction of emotional distress against Rumsey Hall for failing to protect him from his alleged abuser.

Presently before the Court is Plaintiff's motion to compel Defendant to respond to certain interrogatories, requests for documents, and deposition questions.  For the reasons discussed herein, Plaintiff's motion is GRANTED IN PART.

## I.    FACTUAL BACKGROUND

### A.    Allegations of the Complaint

Rumsey Hall is a private boarding and day school for boys and girls.  Compl., ECF No. 1 ¶ 7.  Plaintiff attended the school when he was between eleven and fifteen years old.  *Id.* ¶ 8. Plaintiff alleges that during the time he was a student at the school, Rumsey Hall employed Robert McGrew as the Dean of Students and provided McGrew an office and apartment on the campus of the school.  *Id.* ¶ 10.  Plaintiff further contends that, during the time he was a student at the school,

Rumsey Hall knew or should have known that McGrew either had sexually abused, or posed a significant risk of sexually abusing, students at the school.  *Id.* ¶ 16.  Despite that Rumsey Hall knew or should have known about the risk McGrew posed to students, Plaintiff contends that the school took no action to terminate or otherwise alter McGrew's employment.  *Id.* ¶ 16.  Plaintiff alleges that, ultimately, this failure to act resulted in Plaintiff being sexually abused by McGrew during his time at Rumsey Hall.  *Id.* ¶ 20.

### B.  The Discovery Dispute

On July 19, 2022, Plaintiff served his First Set of Interrogatories (the "Interrogatories") and First Set of Requests for Production (the "Requests for Production" and together with the Interrogatories, the "Discovery Requests").  ECF No. 75 at 4.  The Discovery Requests contained twenty-three interrogatories and thirty-three requests for production.  *Id.*  On August 31, 2022, Defendant objected to seventeen of the interrogatories and twenty-one of the requests for production.  *Id.*  These objections list various grounds for withholding the requested information including that the requests were vague, ambiguous, overly broad, unduly burdensome, prohibited from disclosure by confidentiality agreements, and other reasons.  *Id.* at 5, 8.  Defendant also withheld numerous documents, claiming they were privileged.[1]  *Id.*

In addition to the documents withheld by Defendant on the basis of privilege, there are certain documents that have been withheld by the law firm of Shipman & Goodwin, LLP ("Shipman") on the basis of privilege.  *Id.* at 8-9.  These documents stem from an internal investigation conducted by Shipman for Rumsey Hall related to the allegations in this case.

---

[1] Defendant filed a motion for summary judgment in October of 2022.  Plaintiff's deadline to respond to that motion has been suspended pending resolution of the instant discovery dispute, as Plaintiff believes documents that Defendant is withholding are relevant to its anticipated opposition to Defendant's summary judgment motion.

## II.      LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.

This "obviously broad" rule is "liberally construed," encompassing "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Daval Steel Prods., Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).  Despite this liberal construction, "[t]he burden of demonstrating relevance remains on the party seeking discovery." *Bagley v. Yale Univ.*, 315 F.R.D. 131, 144 (D. Conn. 2016); *see also Fireman's Fund Insurance Co. v. Great American Insurance Co. of New York*, 284 F.R.D. 132, 135 (S.D.N.Y. 2012).  Once the moving party has made a showing of relevance, "the burden then shifts to [t]he party resisting discovery ... [to] show[ ] why discovery should be denied." *Hobson v. Kemper Indep. Ins. Co.*, No. 3:20-CV-00812 (JCH), 2021 WL 3486867, at *2 (D. Conn. Aug. 9, 2021).

## III.      DEFENDANT'S OBJECTIONS

Defendant argues that four primary grounds justify its withholding of documents and refusal to answer various interrogatories:  (1) that certain documents are protected from disclosure by attorney-client or work product privilege; (2) that disclosing certain documents would impermissibly disclose the identity of  victims of sexual assault; (3) that certain information is prohibited from disclosure pursuant to confidentiality agreements; and (4) and that Plaintiff's

requests fall outside the scope of Rumsey Hall's discovery obligations.  For the reasons discussed below, with the exception of two documents, the Court rejects each of these arguments.

### A.  Attorney Client and Work Product Privilege

Defendant's first argument is that various documents are protected by either the attorney-client or work product privileges.

"The attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal advice." *In re Cty. of Erie*, 473 F.3d 413, 418 (2d Cir. 2007).  "A party invoking the attorney-client privilege must show (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *Id.* at 419.

Separately, the attorney work product doctrine shields from disclosure "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3).  "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975).  This doctrine is slightly broader than the attorney-client privilege and requires a party to demonstrate three elements: "The material must (1) be a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by his representative." *Imperati v. Semple*, No. 3:18-CV-01847 (RNC) (TOF), 2020 WL 6441007, at *12 (D. Conn. Nov. 3, 2020). While the attorney work product doctrine ordinarily prohibits discovery of items that are prepared in anticipation of litigation by or for a party or its representative, the Court may order production of the materials  when a party shows a "substantial need" for the material and that the party cannot "without undue hardship, obtain their substantial equivalent by other means."  Fed. R. Civ. P.

26(b)(3)(A).  Even where a court requires production, however, it must not order disclosure of the "mental impressions, conclusions, opinions, or legal theories of a party's attorney."  Fed. R. Civ. P. 26(b)(3)(B).

Regardless of whether the attorney-client privilege or work product doctrine is at play, it is "well established that the party invoking a privilege bears the burden of establishing its applicability to the case at hand."  *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 384 (2d Cir. 2003).  In that vein, Defendant provided the Court *in camera* with a binder of documents it was withholding from production.  The accompanying privilege log lists fifty-two items.  At oral argument, Defendant's counsel clarified that documents 1 through 7 are Rumsey Hall's own records; the remainder of the withheld documents, documents 8 through 52,[2] were items Rumsey Hall's counsel received from Shipman, over which Rumsey Hall is now claiming privilege.  The privilege log provides that the following records are being withheld on grounds of attorney-client privilege and attorney work product:  Rumsey Hall ("RH") Document Nos. 4, 7, 18, 24, 35, 37, 38, 40, 41, 42.  In addition, Defendant claims attorney work product protection, but not attorney-client privilege, over RH Document No. 21.

Despite that Defendant bears the burden of establishing that either the attorney-client privilege or attorney work product protections apply, and that each doctrine has different requirements, Defendant's briefing makes no attempt to distinguish or articulate how the doctrines apply to each specific document.  As it is Defendant's burden to demonstrate how the privileges apply to each document, the Court believes it would not be inappropriate to grant Plaintiff's motion as to all documents withheld on the grounds of attorney-client or attorney work product privilege

---

[2] Defendant's memorandum of law in opposition to Plaintiff's motion, as well as the privilege log submitted therewith address only fifty withheld documents.  In the binder provided to the Court, and the privilege log submitted with that binder, however, Defendant has identified fifty-two documents.  The Court thus addresses all fifty-two documents in this ruling.

based on Defendant's failure to even attempt to specify how the privileges at issue apply to the individual documents.  Nevertheless, the Court recognizes Defendant's interest in not being forced to disclose privileged information is substantial and thus briefly addresses each document below and whether, even despite Defendant's failures, Defendant has supplied the Court sufficient information to prevent the document from being disclosed.

First, RH Document Nos. 4, 35, 37, and 40[3] are what appear to be different drafts of the same document titled "Memorandum For the Files."  This is an unsigned document that appears to have been created by former Rumsey Hall headmaster Thomas Farmen.  There is no indication from the document that it was drafted with the assistance, or at the direction of, an attorney.  Moreover, these memoranda are dated either May or June of 1994, well before Defendant's briefing states that they consulted legal counsel in connection with sexual abuse claims brought against the school by two other students.  ECF No. 76 at 9.  As there is no indication or argument that an attorney was involved in the creation of this memorandum, it is not covered by either privilege in any of its iterations and is not protected by attorney-client or work product privilege.

RH Document No. 7 is labeled "timeline of events" concerning McGrew and two other students.  Rumsey Hall states that this document was created in connection with a claim by a former student that settled in 2016, and its privilege log notes that the timeline was made at the direction of counsel.  It therefore appears this document is protected from disclosure based on the attorney work product doctrine, because it was prepared in anticipation of litigation at the direction of counsel.  Thus, RH Document No. 7 is privileged and need not be produced.

---

[3] In addition to containing the memorandum, RH Document No. 40 contains a fax cover sheet dated May 2, 2000, from Thomas Farmen, Rumsey Hall's former headmaster, to Allen Finkelson, the then-Chairman of Rumsey Hall's Board, who was an attorney at Cravath, Swain & Moore during the relevant time.  Defendant has not argued that Finkelson was acting in the capacity of attorney for Rumsey Hall when the memo was sent to him, and so the Court assumes he was not.

RH Document No. 18 is a mediation statement prepared in anticipation of mediation in a case involving another student who had accused McGrew of misconduct.  This document was created for, and in fact addressed to, Attorney Richard Kenny, who was presumably the parties' chosen mediator in that matter.  Given that this document was disclosed to a third party, it does not satisfy the second prong of the attorney-client privilege.  Additionally, since this document appears to have been disclosed to a third party to be used in a mediation, such disclosure "substantially increase[d] the opportunity for potential adversaries to obtain the information," thus waiving work product privilege.  *Audet v. Fraser*, No. 3:16-CV-940 (MPS) (DFM), 2019 WL 285400, at *2 (D. Conn. Jan. 22, 2019).  Therefore, RH Document No. 18 is not protected by attorney-client or work product privilege.[4]

RH Document No. 21 is titled "Statement of Thomas W. Farmen."  This, too, appears to be a document created by Mr. Farmen, this time in late November 2000.  This document contains a very brief statement that Mr. Farman spoke to an attorney.  It does not disclose what was said, or what he was instructed to do by that attorney.  Moreover, there is no indication that this document was created by or for an attorney, nor does it indicate that it was sent to an attorney.  While the document bears what appears to be a fax header indicating that it came "FROM CRAVATH SWAIN & MOORE," there are any number of ways this document could have come into the possession of a law firm that would not implicate privilege—particularly since the chair of Rumsey Hall's Board of Trustees at the time was an attorney at Cravath.  Based on the information before the Court, however, there is simply no way for it to know where this document

---

[4] The Court notes that had Defendant claimed this document was protected from disclosure under the mediation privilege, its odds of success would have increased substantially.  *See Bradley v. Fontaine Trailer Co. Inc*., No. 3:06-CV-62 (WWE), 2007 WL 2028115, at *4 (D. Conn. July 10, 2007).  ("Nevertheless, one category of information that is generally exempt or protected from the liberal rules of discovery is information regarding mediation").  Having failed to raise this ground for withholding RH Document No. 18, however, it is waived.  *See Ruran v. Beth El Temple of W. Hartford, Inc*., 226 F.R.D. 165, 169 (D. Conn. 2005) ("Where a party fails to perfect a claim of privilege that privilege is deemed waived.").

came from or how it came into the possession of the law firm.  As it is Defendant's burden to demonstrate that a privilege applies and it has failed to do so, the document is not protected by attorney-client or work product privilege.

RH Document No. 24 is another mediation statement, this one apparently created by a former student in an unrelated case.  As it does not appear to have been created by Rumsey Hall or an attorney working on its behalf, this document cannot be protected by attorney-client or work product privilege as a whole.  The Court notes there are some handwritten notations on this document, but as Defendant has failed to provide any information as to who made these notes, the Court cannot find they are privileged, and the document is not protected by attorney-client or work product privilege.

RH Document No. 38, which consists of handwritten notes, is an exceedingly close call. There is no indication in Defendant's briefing as to who wrote these notes, why, or when they were written.  Based on the content of the notes, it is possible that they were written by or for an attorney, and it is possible they were not.  Moreover, the notation on Rumsey Hall's privilege log concerning this document states only that they are "notes of Thomas Farmen's consultation with counsel following receipt of claim by alumni re: conduct of Robert McGrew."  From this description it is unclear to the Court who made these notes and what the purpose of the notes were, and thus why either privilege applies to them.  While the Court could, and perhaps should, order this document produced without allowing Defendant an opportunity to supplement its arguments as to why a privilege attaches to this document, if Defendant wishes to continue its assertion of privilege over this document, it will allow Defendant an opportunity to submit more information regarding who wrote these notes, when, and why, no later than July 12, 2023.  If the Court does not receive this

information by that date, this document will be deemed not protected by attorney-client or work product privilege.

RH Document No. 41 is also a document of handwritten notes. Once again, Defendant's briefing says nothing about what this document is or why it is protected by either of the potentially applicable privileges. Defendant's privilege log, however, indicates that the document contains "notes of Thomas Farmen related to drafting of 6/8/1994 'Memorandum for the Files.'" For the reasons discussed above regarding the memorandum itself, Defendant has supplied the Court with no reason to believe an attorney was involved in the process of drafting the memorandum. Thus, Defendant has failed to carry its burden of demonstrating this document is privileged.

Finally, Defendant seeks to withhold RH Document No. 42, the entire file of Rumsey Hall's prior counsel regarding claims made by alumni about McGrew's conduct. Initially, that Defendant decided to group the entire file of predecessor counsel into a single document makes this document all but unusable to the Court and entirely unusable to Plaintiff in making his objections. Further, it is contrary to the rule that "each item that is withheld must be specifically identified and described in a privilege log." *Mid-Continent Cas. Co. v. Eland Energy, Inc*., No. 3: 7-MC-78 (CFD), 2007 WL 948154, at *1 (D. Conn. Mar. 26, 2007). While the Court has reviewed the entirety of this document, and believes that much of it is duplicative of documents otherwise contained on the privilege log, the Court should not have to bear the burden of parsing this entire legal file to determine where one document ends and another begins, and whether any of the documents are in fact privileged. Defendant has had more than enough time to separate this file into individual documents and complete the work necessary to demonstrate to the Court that these documents are privileged. It has elected not to do this. Therefore, Defendant has not sustained its

burden of establishing that either attorney-client or work product privilege applies to RH Document No. 42.

In sum, as to each of the documents Defendant contends are protected by either attorney-client or attorney work product privilege, with the exception of RH Document Nos. 7 and 38, Defendant has not sustained its burden of establishing that the documents should be withheld on grounds of attorney-client or attorney work product privilege.  Because the records are not protected on the other grounds asserted by Defendant either, as explained below, Defendant shall disclose them to Plaintiff no later than seven days after entry of the protective order described below.

### B.  <u>Production Would Disclose The Identity Of Sexual Assault Victim</u>

Defendant next argues that Interrogatory Nos. 10, 11, 12, and 13, and Requests for Production Nos. 1, 2, and 5, call for production of documents that, if disclosed to Plaintiff, would reveal the identity of victims of sexual assault, in contravention of Connecticut's public policy of protecting the identities of victims of sexual assault.  On the basis of this objection, they have withheld RH Document Nos. 1–10, 17–35, 37, and 39–52 from their objection/privilege log.  The Court is unpersuaded that Defendant's contentions justify withholding these documents from Plaintiff.

Initially, Defendant has cited no cases in support of its argument that arise in the discovery context.  Two cases cited by Defendant examine whether to allow a claimant to proceed in a fictitious name, *see Doe v. Johnson*, No. CV030483186, 2003 WL 22962232, at *1 (Conn. Super. Ct. Dec. 2, 2003) and *Vargas v. Doe,* 400, 900 A.2d 525, 527 (Conn. App. 2006).  Another relates to a freedom of information request, *see Groton Police Dep't v. Freedom of Info. Comm'n*, 931 A.2d 989, 994 (Conn. App. 2007), and the last discusses whether a court incorrectly permitted the

complaining witness in a criminal trial to testify anonymously, *see State v. Bennett-Gibson*, 851 A.2d 1214, 1229 (Conn. App. 2004).  Thus, even assuming Defendant is correct that Connecticut has a strong public policy against disclosure of this information, Defendant has failed to point to a single instance, in state or federal court, where a party was excused from a discovery obligation because of this policy.

The two state statutes Defendant references also do not support its request to withhold these documents.  The first, Connecticut General Statute § 54-86e states:

> the name and address of the victim of a sexual assault under [various criminal statutes] and such other identifying information pertaining to such victim as determined by the court, shall be confidential and shall be disclosed only upon order of the Superior Court, except that (1) such information shall be available to the accused in the same manner and time as such information is available to persons accused of other criminal offenses, and (2) if a protective order is issued in a prosecution under any of said sections, the name and address of the victim, in addition to the information contained in and concerning the issuance of such order, shall be entered in the registry of protective orders pursuant to section 51-5c.

The Court first notes that Section 54-86e is contained within the criminal procedure section of the Connecticut General Statutes, making its applicability to the instant case limited at best. Defendant has cited no case in which this statute has been used to prevent disclosure of the names of victims in an unrelated civil case.  Moreover, as discussed below, the parties in this action will be entering a strict protective order before any documents are disclosed.  Thus, the potential for the name of a victim of sexual assault to be made public, at least before trial, is exceedingly small. Section 54-86e is therefore not a basis for allowing Defendant to withhold documents that name victims of sexual assault.

Defendant also cites Connecticut General Statute § 17a-101k(a), which states:

> The Commissioner of Children and Families shall maintain a registry of the commissioner's findings of abuse or neglect of children pursuant to section 17a-101g that conforms to the requirements of this section. The regulations adopted pursuant to subsection (i) of this section shall provide for the use of the registry on

a twenty-four-hour daily basis to prevent or discover abuse of children and the establishment of a hearing process for any appeal by a person of the commissioner's determination that such person is responsible for the abuse or neglect of a child pursuant to subsection (b) of section 17a-101g. The information contained in the registry and any other information relative to child abuse, wherever located, shall be confidential, subject to such statutes and regulations governing their use and access as shall conform to the requirements of federal law or regulations. Any violation of this section or the regulations adopted by the commissioner under this section shall be punishable by a fine of not more than one thousand dollars or imprisonment for not more than one year.

Defendant selectively cites this statute, bringing the Court's attention only to the language stating that "any other information relative to child abuse, wherever located, shall be confidential, subject to such statutes and regulations governing their use and access as shall conform to the requirements of federal law or regulations," ECF No. 76 at 11.  When read as a whole, however, it is clear that Section 17a-101k(a) does not prohibit disclosure of the documents at issue here.  First, the statute does not relate to any information related to child abuse writ large.  It is located within the social and human services section of the Connecticut statutes and pertains to the responsibilities of the Commissioner of the Department of Children and Families and information that she, or her department, has.  Further still, Defendant has pointed to no case law interpreting this provision to in any way curtail or restrain the discovery obligations of any party to a federal lawsuit.  Allowing Defendant to withhold documents from Plaintiff on the basis of this statute, then, would be inappropriate.  Therefore, the objection to responding to Interrogatory Nos. 10, 11, 12, and 13, and Requests for Production Nos. 1, 2, and 5, on the basis that it would require disclosure of the identity of sexual assault victims is overruled.  Defendant shall produce RH Document Nos. 1–10, 17–35, 37, 39–52, and supplement its responses to the interrogatories no later than seven days after entry of the protective order described below.

C. <u>Disclosure Is Barred By Confidentiality Restrictions</u>

Defendant next argues that it is prohibited from disclosing certain documents based on confidentiality provisions in prior settlement agreements with other students who made claims against the school.  Defendant asserts this objection with respect to Interrogatory Nos. 5–13, 17, and 23, and Request for Production Nos. 1, 2, 5, 14, 17, and 18–23 and have withheld RH Document Nos. 1–10, 17–35, 37, and 39–52 from their objection/privilege log on this basis.

Upon review of the relevant provisions of the confidentiality agreements, it is clear that the confidentiality provisions of these settlement agreements bind those other individuals, but do not bind Defendant.  They are one-sided provisions, preventing the previous claimants from disclosing information related to the settlement agreements.  Defendant does not seriously contest this. Instead, its opposition to the motion to compel argues that "it is implicit" in the terms of the agreements that "defendant itself would abide by the confidentiality provisions of the settlement agreements."  ECF No. 76 at 14.  The Court sees nothing in the language of these provisions that would require Defendant not to disclose the information contained in the settlements.  Moreover, both agreements have provisions that allow the contracting party to produce the documents either "as may be required by law" or "if required by a court order."  *Id.* at 12–13.  Thus, even were Defendant bound by these agreements, which the Court does not believe it is, this order requiring disclosure would allow Defendant to produce the required documents without violating these provisions.  Thus, Defendant's objection to producing RH Document Nos. 1–10, 17–35, 37, 39– 52, on the basis that it would violate the confidentiality provisions of other prior settlements is overruled and Defendant shall produce the documents no later than seven days after entry of the protective order described below.

### D. <u>Discovery Requests That Exceed The Scope of Discovery</u>

Defendant's final objection differs slightly with respect to requests for production of documents and interrogatories.  Thus, the Court will address each of the discovery mechanisms separately.

### 1.  Document Requests

Defendant first objects that certain documents they have identified should not be produced because the discovery requests are vague, ambiguous, overly broad, not reasonably specific, narrow, or limited in scope.  Given that Defendant has already identified the documents in question, it is unclear how any of these specific objections are properly asserted.  Instead, at oral argument Defendant clarified that where this objection is asserted, it is actually an objection that the subject matter of the documents exceeds the permissible scope of discovery.  With this clarification in mind, the Court will examine whether the documents at issue are relevant to this dispute and thus discoverable.

"In order to be relevant for Civil Rule 26 discovery purposes, information and evidentiary material must be relevant as defined in Rule of Evidence 401." *S.C. Johnson & Son, Inc. v. Henkel Corp.*, No. 3:19-CV-00805 (AVC), 2020 WL 5640528, at *6 (D. Conn. Sept. 22, 2020).  Federal Rule of Evidence 401 provides that information is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  For purposes of its objection, Defendant has grouped the withheld documents into seven categories.  The Court will examine whether each of these categories, and thus the documents within them, are relevant to the instant dispute.

First, Defendant argues that an unsigned proffer agreement for another alumni who made similar allegations against McGrew is not relevant to this action.  The present case deals with

allegations of sexual assault by McGrew of a student at Rumsey Hall.  To say that any document dealing with McGrew's alleged sexual assault of a student, even if it involves someone other than Plaintiff, is somehow not relevant defies logic.

The second category of documents withheld by Defendant are correspondence between Defendant, its insurance broker, and insurance company.  Defendant appears to assert that because these documents relate to allegations by different alumni, and not the Plaintiff here, they are not relevant.  The Court disagrees.  Once again, this case relates to alleged sexual assaults against Plaintiff and whether Defendant knew or had reason to know that McGrew posed a risk to Plaintiff. It thus appears to the Court that any documents discussing any alleged sexual abuse by McGrew are certainly relevant.  Of course, whether such documents are ultimately admissible at summary judgment or trial is a question for another day.

Next, Defendant argues that correspondence between McGrew's attorney and Attorney Rueckert of Shipman in relation to a community letter sent out in 2019, and whether McGrew was allowed to be present on Defendant's campus, are not relevant.  These emails concern McGrew and the school's response to the allegations of abuse levied against him, and are therefore relevant.

Defendant also contends that summaries of medical treatment received by other alumni who made allegations of abuse by McGrew are not relevant to this action.  These summaries contain information that purportedly supports the accusers' allegations of sexual abuse.  Once again, the idea that McGrew may have sexually assaulted others, not just Plaintiff, is relevant to this action.  Thus, the medical summaries are relevant.

Defendant next argues that minutes from a board meeting held in May 1994 are not relevant.  Yet the parties agree that what Defendant knew regarding McGrew's activities, and when they knew it, is not only relevant but perhaps the key issue in this case.  Whether McGrew was

discussed during this board meeting is certain to make facts regarding Defendant's knowledge more or less probable. This document is therefore relevant.

The next document withheld by Defendant is the "entire legal file of school's former counsel regarding claims made by alumni regarding conduct of Robert McGrew." The Court has addressed above the argument related to privilege concerning this legal file. This collection of documents, which relates squarely to matters at issue in the present litigation, is clearly relevant.

Defendant further argues that communication between its former legal counsel and Attorney Rueckert, its current counsel, regarding the legal file created by former counsel is not relevant. While this is perhaps the closest call of all Defendant's relevance objections, the Court remains unpersuaded. These emails disclose dates when former counsel was retained, which in turn could make it more or less likely that Defendant knew about McGrew's alleged conduct during certain times. They are thus relevant.

Finally, Defendant argues that a draft application for discovery sent to Defendant by a separate alumni's legal counsel is irrelevant. Again, this document contains details regarding the claims of other former students who accused McGrew of sexual improprieties. Whether a finder of fact will ultimately find an unsworn, unfiled, draft request for discovery to be a persuasive piece of evidence is not what the Court, or the parties, are tasked with determining at this stage. Rather, whether this document makes a fact of consequence more or less probable is the relevant question. It is clear that this document may, and it is thus relevant.

In short, the Court finds that none of Defendant's relevance objections asserted as to RH Document Nos. 3, 7–17, 19, 20, 22, 23, 25, 27, 29–30, 32–34, 36, 38, and 40–51, have merit. Thus, these documents must be produced no later than seven days after entry of the protective order described below.

### 2. *Interrogatories*

Defendant next objects specifically to Interrogatory Nos. 2, 3, and 4, each of which asks Defendant to "state the exact information known to [a certain person or party] that the defendant may use to support its claims and defenses." Defendant objects to these interrogatories on the ground that Defendant cannot possibly know everything that will be relevant to its claims and defenses. Defendant provides no law or support that such an objection is proper. In fact, Courts in this district routinely order compliance with interrogatories similar to the ones at issue in this case without even examining this issue. *See e.g.*, *Success Sys., Inc. v. CRS, Inc*., No. 3:21-CV-01391 (SVN) (TOF), 2023 WL 2403940, at *4 (D. Conn. Mar. 8, 2023) (ordering party to answer interrogatory requesting "all facts supporting each of [Success's] affirmative defenses"); *Maziarz v. Hous. Auth. of Town of Vernon*, No. 3:10-CV-2029 (JCH), 2011 WL 4538071, at *1 (D. Conn. Sept. 29, 2011) (requiring answer to interrogatory requesting a party to "[S]tate all facts upon which you base your denial of the allegation in paragraph 16 of the complaint."). In fact, at least one court in this district has specifically noted certain interrogatories may ask a party "to state all the facts on which it bases its contentions." *McCarthy v. Paine Webber Grp., Inc*., 168 F.R.D. 448, 450 (D. Conn. 1996). It is thus clear that this interrogatory is not inappropriate on its face and Defendant's contention that they should not have to answer it for that reason is denied.

Defendant also contends that Plaintiff already had the chance to obtain the same information through depositions of the people as to whom the interrogatories seek information. Simply put, this argument is counter to the law. Courts in this district have repeatedly noted that "a party may not incorporate deposition testimony or otherwise rely on future deposition testimony

in lieu of offering a complete and separate response to each interrogatory." *Pouliot v. Paul Arpin Van Lines, Inc*., No. 3:02-CV-1302 (DJS), 2004 WL 1368869, at \*2 (D. Conn. June 14, 2004); *Doe v. Town of Greenwich*, No. 3:18-CV-01322 (KAD) (SALM), 2020 WL 2374991, at \*4 (D. Conn. Feb. 20, 2020); *Rivera v. Affineco, LLC*, No. 16-CV-1666 (JBA) (JGM), 2018 WL 1046317, at \*7 (D. Conn. Feb. 26, 2018).  Whether Plaintiff did, or could have, made inquiries into these same questions during depositions is not relevant to whether Defendant is required to respond to the instant interrogatories.  It must still answer the interrogatories.

### 3. Deposition Testimony

Finally, Plaintiff requests the Court overrule certain objections made at the depositions of Thomas Farmen and Amy Hoeniger, asks that he be allowed to reopen their depositions, and receive answers to the questions to which objections were previously levied.  Specifically, during the deposition of Thomas Farmen, Mr. Farmen refused to answer certain questions related to the previous settlements with students on the advice of counsel,  based on the fact that the settlement agreements contained broad confidentiality provisions.  *See* ECF No. 75-5 at 4–5.  For the reasons discussed above, this objection has been overruled and Plaintiff is entitled to reopen the deposition so that he may have his questions on this topic answered.

Ms. Hoeniger refused to answer certain questions based on an assertion that the information obtained through "an investigation conducted by an attorney" was privileged.  *See* ECF No. 75-5 at 14.  For the reasons discussed below, the Court holds that the mere fact that information was obtained as part of an attorney's investigation does not necessarily render it privileged.  Thus, to the extent that Ms. Hoeniger refused to answer on that basis alone, Plaintiff is entitled to answers to those questions.  It is not clear to the Court, however, that this was in fact the sole basis for the assertion of privilege.  If Ms. Hoeniger learned about certain information through conversations

with counsel, such conversations may still be subject to the attorney-client privilege.  Thus, the Court encourages the parties to meet and confer regarding the precise nature of Ms. Hoeniger's privilege claims before expending the time and expense of reopening the deposition.

Therefore, Plaintiff's motion is GRANTED as it relates to unanswered deposition questions.  Plaintiff may reopen the depositions of Mr. Farmen and Ms. Hoeniger, but may ask only those questions that were previously unanswered, consistent with the discussion above.

## IV.   SHIPMAN'S OBJECTIONS

### A.   Shipman's Involvement

Shipman represents that it has provided legal representation to Defendant for many years. In December of 2014, Shipman represented Defendant in connection with threatened litigation by an alumnus who alleged he had been sexually abused by McGrew.  As part of its representation of Defendant in that matter, Shipman learned that prior claims had been made against Defendant related to the conduct of McGrew, including matters that had previously settled; Shipman states that it was apparent there were other potential claimants and Defendant anticipated additional claims would be filed.

Shipman states that, in 2016, it was engaged to conduct an investigation of allegations of sexual molestation made against the school and advise Defendant about how to respond to the ongoing and anticipated litigation.  The investigation began as an internal investigation involving obtaining and reviewing documents and interviewing current and former school personnel.  On May 26, 2017, in consultation with Shipman, Defendant sent a letter to alumni and other community members.  The letter, which was sent by Matt Hoeniger, the Board of Trustees Chair and Head of School, stated that the Defendant was "committed to preventing [acts of sexual misconduct] as well as investigating and responding appropriately to any reports of sexual

19

misconduct of which [it] may have been previously unaware." ECF No. 78-1 at 1.  The letter further noted the Board had "engaged legal counsel for advice and guidance." *Id*.  The letter encouraged recipients who had "information relevant to these important issues and concerns" to contact Shipman. *Id.*

In response to the letter, Shipman and Hoeniger received email communications and telephone calls, and they responded to these communications by email or phone.  Shipman made handwritten notes of resulting conversations with alumni, and Hoeniger wrote notes to Shipman informing its attorneys of conversations he had with alumni.  Shipman later provided a confidential oral report and advice to the Board of Trustees.  On May 3, 2019, the school issued a second letter to the community, stating that the investigation "may not have uncovered all harms due to misconduct that may have been experienced by students while at Rumsey," and encouraged people with information to contact Hoeniger or Shipman.  ECF No. 78-2.

### B.  Documents Withheld by Shipman

Shipman has represented that it did not disclose the entirety of its file to defense counsel for Rumsey Hall in this litigation.  Instead, it has maintained its own file regarding the investigation.  Shipman has provided some of the documents from that file to defense counsel in this action, and Defendant has claimed privilege over many of these documents, as discussed above.  Shipman has also maintained a separate collection of documents as its own, and has not provided these other documents to either defense counsel or Plaintiff in this litigation, contending that the documents are protected under various claims of privilege.  Shipman provided these withheld records to the Court for *in camera* review (the "Shipman Documents").

Shipman has chosen to assert objections to the production of the Shipman Documents by asserting general objections that cover groups of documents.  The Court will examine each of these

groups of documents in turn.[5]  Before addressing the specific objections, however, the Court feels

compelled to make one initial point.  As discussed above, the party asserting the privilege has the

obligation to demonstrate that the documents are, in fact, privileged.  Despite this, Shipman

provides no specific discussion of any particular document.  In fact, Shipman fails to even identify

precisely which documents it believes are covered by each of their individual arguments.  As such,

the Court is left to review the documents on its own and do its best to guess which arguments apply

to which documents.  The Court will make clear throughout the remainder of its decision which

documents it is discussing for each argument.

> *1.  Communication Between Counsel and Current or Former Employees of Defendant*

Shipman first asserts that any communications between current and former employees of

the Defendant and Shipman are protected by attorney-client privilege.  As discussed above, in

order to demonstrate that a document is protected from disclosure via the attorney client privilege,

the party asserting the privilege must show the document is "(1) a communication between client

and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the

purpose of obtaining or providing legal advice."  *In re Cnty. of Erie*, 473 F.3d at 419.

As best the Court can discern, this objection could pertain only to email communication

that is exclusively between Shipman and employees of Defendant.  Therefore, the Court believes

that there are seven documents that are potentially covered by this argument.  These documents

are Shipman Document Nos. 25, 41, 51, 54, 58, and 65.  Each of these documents are

communications between an employee of Rumsey Hall and Shipman, made for the purpose of

---

[5] Initially, Shipman withheld 105 documents on privilege grounds.  While this motion to compel was pending, Shipman and Plaintiff agreed that 11 of the 105 documents were not relevant to the case at issue and stipulated that the Court need not determine whether Shipman was required to disclose them.  Thus, the Court will not rule on the whether Shipment Documents Nos. 1, 3, 43, 69, 82, 83, 98, 99, 100, 101, and 104, must be produced to Plaintiff.

obtaining legal advice regarding the internal investigation that Shipman was hired to conduct, and appear to have been kept completely confidential.  Therefore, these documents are protected by attorney-client privilege and need not be disclosed.

### 2. *Notes of Conversations Taken by Counsel*

Next, Shipman argues that the notes of counsel related to information learned through the internal investigation are attorney work product and are protected from disclosure.  Based on the Court's review of the documents provided by Shipman, this argument appears to apply to the following Shipman Document Nos.: 4, 6, 7, 22, 23, 26, 29, 30, 36, 44, 45, 46, 47, 52, 57, 64, 67, 68, 74, 75, 78, 80, 81, 86, 88, 90, 95, 97, 102, and 103.  Again, as discussed above, in order to successfully assert the attorney work product privilege "the material must (1) be a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by his representative." *Imperati*, 2020 WL 6441007, at *12.

In its motion, Plaintiff argues that the Shipman Documents generally, including the notes in question, were not prepared in anticipation of litigation, and that even if they were, they should be produced as Plaintiff has a substantial need for the documents and cannot otherwise obtain them or their equivalent.  Turning first to whether the documents were prepared in anticipation of litigation, the Second Circuit has been clear that a document need not be prepared "primarily to assist in litigation" in order to qualify for work product protection.  *United States v. Adlman*, 134 F.3d 1194, 1203 (2d Cir. 1998).  Rather, the question is "whether the document can fairly be said to have been prepared . . . because of the prospect of litigation." *Id.* at 1203–4 (internal quotations omitted).  Here, although it is a close call, the Court believes that the notes were created in anticipation of litigation.  Although the instant litigation had not yet begun, at the time that Shipman was retained, there was active litigation between Defendant and another student

regarding actions allegedly committed by McGrew, and Shipman represents that the school contemplated additional claims being filed against it. That there was *an* actively pending litigation when Shipman was hired to investigate possible additional instances of abuse is enough for the Court to determine that when Defendant hired Shipman it had "the prospect of litigation in mind." *Id.* at 1204. Therefore, the in anticipation of litigation prong is satisfied.

Next, Plaintiff argues that even if the documents were prepared in anticipation of litigation, they should still be produced as Plaintiff has a substantial need and no alternate way to obtain the information. Initially, these handwritten notes are not verbatim recitations of what was stated on the phone calls. Rather, they appear to be what the attorney thought were the most important parts of a given phone call, and how that information was relevant to the ongoing investigation. As a result, these notes constitute the mental impressions, conclusions, opinions, or legal theories of Shipman attorneys and are thus immune from disclosure under Federal Rule of Civil Procedure 26(a)(b)(3)(B).

Even were this not the case, however, at this time the Court is not convinced that Plaintiff would be unable to obtain this information from another source. In his briefing on this point, Plaintiff argues primarily that Defendant has heretofore refused to provide the names of any of the students or faculty that came forward as part of the internal investigation. This, in turn, prevents Plaintiff from obtaining the facts contained in Shipman's notes through any other means. As discussed at oral argument, however, Defendant is amenable to providing to Plaintiff the list of people to whom the 2017 and 2019 community letters were sent. As discussed below, this Court order requires Defendant and Shipman to provide a significant amount of information on this topic, including these lists. Therefore, as of this time, the Court believes Plaintiff will have enough

information to separately pursue any facts contained in the notes Shipman seeks to protect, and Plaintiff's alternative argument also fails.

For these reasons, Shipman Document Nos. 4, 6, 7, 22, 23, 26, 29, 30, 36, 44, 45, 46, 47, 52, 57, 64, 67, 68, 74, 75, 78, 80, 81, 86, 88, 90, 95, 97, 102, and 103, are protected by the attorney work product privilege and the Court will not order they be disclosed to Plaintiff.

> 3. *Communications Between Alumni, Counsel, and Rumsey Hall Employees*

The final category of documents Shipman claims are privileged are communications between certain third parties and Shipman or Hoeniger. In large part, these consist of messages received in response to the community letters.[6] Based on the Court's review, this objection applies to Shipman Document Nos.: 2, 19, 20, 42, 48, 49, 50, 53, 55, 56, 59, 61, 62, 63, 66, 70, 71, 72, 73, 76, 77, 79, 84, 85, 87, 91, 92, 93, 94, and 96. In support of these objections, Shipman argues that these emails are "the product of the work of counsel" and therefore should be protected from disclosure under the attorney work product doctrine. ECF No. 78 at 14. Yet, none of the emails received from alumni, or any other third party, were created by either Shipman or an agent acting at Shipman's direction—a central requirement of the work product doctrine. While the messages were sent to either Shipman or Hoeniger in response to a letter Shipman drafted for Defendant to send to its community members, that is not enough to bring them within the ambit of either attorney

---

[6] Many of these types of communications include both the email from the community member to Hoeniger and then an email message in which Hoeniger forwards the community member's message to Shipman.

client or work product protection.[7]   The Court recognizes that the messages contain sensitive information about deeply personal matters.  But these messages from third parties do not consist of the type of information the work product doctrine protects or was designed to protect.

This is not to say, however, that each of these documents is to be turned over in their current form.  Many of these emails were forwarded to Shipman by Hoeniger, and thus contain certain messages between Hoeniger and Shipman that are protected by the attorney-client privilege. Further, Shipman Document No. 42, in particular, contains an assortment of handwritten notes that Shipman states are notes of counsel.  Such notations are protected by the attorney work product and attorney-client privilege.

Thus, all emails between Defendant and Shipman discussing the emails received from third parties, or any handwritten notes on the emails, need not be produced.  All emails directly from the third parties to either Shipman or Defendant, however, do need to be produced.  How Shipman and Defendant would like to go about producing these emails is up to them.  At the hearing held on June 13, 2023, the Court previewed this ruling and advised Defendant to begin pulling the underlying emails with third parties directly from its records.  If Defendant was able to do this, they may produce the original emails that were received directly from the third parties, without the communications between Hoeniger and Shipman.  If for some reason this effort was unsuccessful, or Defendant would rather not proceed this way, Shipman may redact all privileged

---

[7] In support of its position, Shipman relies on *Buck v. Indian Mountain School*, No. 15-cv-123 (JBA) (JGM), 2017 WL 421648, at *6 (D. Conn. Jan. 31, 2017), in which U.S. Magistrate Judge Margolis held, in a similar factual scenario involving both Attorney Rueckert and Plaintiff's counsel, that Shipman's documents from an internal investigation of a school whose employee was accused of sexual abuse were protected from disclosure under the attorney work product doctrine.  *Buck* in turn relied on *Sandra T.E. et al. v. South Berwyn School*, 600 F.3d 612 (7th Cir. 2010), which held that the notes and memoranda of a law firm hired to conduct an internal investigation were protected under the attorney-client and attorney work product doctrines.  This Court's holding is consistent with *Sandra T.E.*, in that Shipman's notes and memoranda need not be disclosed.  As to the communications from third parties to Shipman and Hoeniger, however, the Court fails to see how these qualify for either type of protection.  Thus, the Court respectfully disagrees with Judge Margolis' conclusion in *Buck* that "communications with alumna and alumnus who responded to defendant's letter" are confidential and thus protectable.  *Buck*, 2017 WL 421648, at *6.

communications and material and produce to Plaintiff the unredacted emails from the third parties, once the protective order discussed below is in place. The Court has no preference how the Defendant and Shipman choose to proceed, as long as Plaintiff receives all of the information that he is entitled to under this order. These documents must be produced no later than seven days after entry of the protective order discussed below.

### 4. Prohibition on Disclosure of Identities

Finally, Shipman argues that it is prohibited from disclosing the identities of the sexual assault victims at issue for substantially the same reasons Defendant asserted. For the same reasons discussed above, the Court rejects this argument and overrules this objection.

### 5. Remaining Documents

Shipman Document No. 5 is a timeline that appears to be a duplicate of RH Document No. 7 from Defendant's binder. For the same reasons explained above with respect to Defendant's Document No. 7, Shipman Document 5 need not be produced to Plaintiff.

At this point, based on the Court's review of the documents, the Court has addressed objections relevant to 77[8] of the 105 documents withheld. This leaves 28 documents.[9] These documents appear to consist largely of communications between Shipman and Defendant's prior counsel attempting to obtain any files in their possession, communications between Shipman and McGrew's counsel, and communications between Shipman and Defendant's insurance adjuster. Shipman devotes no briefing to explaining why they should be withheld. As a result, Shipman has clearly failed to meet its burden of showing they are protected. Thus, any documents that appear

---

[8] This includes the eleven documents that Shipman and Plaintiff stipulated were no longer relevant.
[9] Specifically, the Shipman Document Nos. not previously discussed are numbers 5, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 21, 24, 27, 28, 31, 32, 33, 34, 35, 37, 38, 39, 40, 60, 89, and 105.

on Shipman's privilege log that have not already been specifically discussed in this order, shall be produced to Plaintiff no later than seven days after entry of the protective order discussed below.

## V.     FINAL MATTERS

Finally, the Court will briefly address the issue of privacy for the alleged victims of the sexual assaults in this case.  While the Court appreciates the arguments made by Defendant and Shipman that there is a public policy of keeping the identities of such victims private, the Court has not been provided with, nor has it located on its own, any legal authority requiring, or even allowing, it to prevent Plaintiff from receiving this information.  Recognizing the sensitive nature of the allegations made by these individuals, however, the Court believes the most prudent approach would be for the parties to negotiate a protective order amongst themselves that contains an attorney's eyes-only designation for documents that contain the identity of these alleged sexual assault victims.  This should be negotiated and submitted to the Court for its approval no later than July 17, 2023.

Once the protective order is in place, Defendant and Shipman can produce the documents containing names of alleged victims of sexual abuse, with no concern that such information will be disclosed to anyone other than Plaintiff's counsel.  Any protective order should contain provisions addressing how the parties will file any documents with the Court that contain the identities of alleged victims of sexual abuse, including whether they will be filed under seal and/or whether use of pseudonyms in court filings would be appropriate.  A strict protective order will mitigate any potential negative effects the disclosure will have on these victims.

Additionally, as discussed at the hearings on this motion, Defendant shall produce to Plaintiff a list of people who received the community letters in 2017 and 2019, with updated contact information.

## VI.     CONCLUSION

For the reasons detailed above, Plaintiff's motion to compel is GRANTED IN PART.

The parties shall submit a proposed protective order no later than July 17, 2023 that contains procedures allowing for documents to be produced under an attorney's eyes only designation, as well as procedures addressing how any such documents will be filed with the Court.

Defendant shall produce RH Document Nos. 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, and 52 from its objection/privilege log no later than seven days after entry of the protective order.

Defendant shall NOT produce RH Document No. 7.

If Defendant continues to believe RH Document No. 38 should not be produced, then, no later than July 12, 2023, Defendant must submit more information regarding who wrote these notes, when, and why.  If Defendant does not submit this information by July 12, 2023, RH Document No. 38 must also be produced.  If Defendant does submit such further information, the Court will enter a supplemental order informing Defendant of whether RH Document No. 38 must be produced.

Shipman shall produce Shipment Document Nos. 2, 5, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 24, 27, 28, 31, 32, 33, 34, 35, 37, 38, 39, 40, 42, 48, 49, 50, 53, 55, 56, 59, 60, 61, 62, 63, 66, 70, 71, 72, 73, 76, 77, 79, 84, 85, 87, 89, 91, 92, 93, 94, 96 and 105, no later than seven days after entry of the protective order.

Shipman is NOT required to produce Shipman Document Nos. 4, 6, 7, 22, 23, 25, 26, 29, 30, 36, 41, 44, 45, 46, 47, 51, 52, 54, 57, 58, 64, 65, 67, 68, 74, 75, 78, 80, 81, 86, 88, 90, 95, 97, 102, and 103.

Defendant and Shipman shall file notices of compliance with this order within two days after the documents are produced.

Plaintiff's opposition to Defendant's motion for summary judgment shall be due twenty-one days from the date the notices of compliance are filed.

**SO ORDERED** at Hartford, Connecticut, this 10th day of July, 2023.

 */s/ Sarala V. Nagala*

SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE