## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TIM DAVIS, | ) | 3:20-cv-1822 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RUMSEY HALL SCHOOL, INC., | ) | |
| *Defendant*. | ) | September 29, 2023 |

### RULING ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Sarala V. Nagala, United States District Judge.

Plaintiff Tim Davis alleges he was sexually abused by Defendant Rumsey Hall School's former Dean of Students Robert McGrew when he was a boarding student at the school. He has brought claims against the school for negligence, recklessness, negligent infliction of emotional distress, and intentional infliction of emotional distress. Defendant has moved for partial summary judgment on the ground that there is no genuine dispute it did not have notice McGrew would abuse, or had a propensity to abuse, Plaintiff or any other student prior to the fall of 1991, when another student's parent reported McGrew to the headmaster.[1] In response, Plaintiff argues Defendant's motion must fail because notice is not a required element of his claims under *Doe v. Saint Francis Hospital and Medical Center*, 309 Conn. 146 (2013) and, even if it was, there is a genuine dispute regarding whether the school was on notice of McGrew's propensity to abuse students prior to the fall of 1991.

---

[1] Defendant initially sought partial summary judgment with respect to all events occurring before the winter of 1992, when it is undisputed Plaintiff first reported McGrew's alleged conduct to his advisor, who escalated the report to the school's headmaster. But supplemental discovery provided to Plaintiff after the filing of Defendant's summary judgment motion—in response to the Court's decision on Plaintiff's motion to compel, *see* ECF No. 93—"revealed" that another student's parent had reported inappropriate conduct by McGrew in or around the fall of 1991 (the parties dispute exactly when). Therefore, Defendant now seeks summary judgment only with respect to alleged abuse of Plaintiff occurring before that parent's report: a series of "dorm room incidents" occurring in the 1989-1990 and 1990-1991 academic years. *See* Def.'s Reply Br., ECF No. 112 at 1, 1 n.2.

For the reasons explained below, the Court finds that Plaintiff has adequately pleaded a *Saint Francis* theory of liability, and therefore denies Defendant's motion for partial summary judgment to the extent it seeks to eliminate all liability for incidents occurring prior to the fall of 1991.  The Court further finds, on the remaining question, that there is a genuine dispute as to whether Defendant was on notice prior to the fall of 1991.  Therefore, Defendant's motion for partial summary judgment is DENIED in its entirety.

## I.      FACTUAL BACKGROUND

The following facts are undisputed, unless otherwise noted.[2]  Plaintiff was a boarding student at Rumsey Hall School from sixth to ninth grade during the 1988-1989 through 1991-1992 academic years.  Pl.'s L.R. 56(a)2 St., ECF No. 108 (redacted), ECF No. 111 (unredacted) ¶ 6. McGrew was Defendant's Dean of Students from approximately 1988 to 2000, *id.* ¶ 12, and also served as a teacher, coach, and dorm parent, *id.* ¶¶ 28–29. During McGrew's hiring process, Defendant did not learn of any inappropriate behavior by McGrew.  *Id.* ¶ 15.

### A.   McGrew's Alleged Abuse of Plaintiff

McGrew was Plaintiff's dorm parent during his seventh and eighth grade years, from the fall of 1989 to the spring of 1991, which meant that McGrew had an apartment in Plaintiff's dorm. *Id.* ¶ 18; Pl.'s Add'l Mat. Facts ¶¶ 28, 32.  Plaintiff alleges that during this period, McGrew came into his dorm room at night approximately twice a week and sexually molested him, a total of more than 100 times (the "dorm room incidents").  Pl.'s L.R. 56(a)2 St. ¶ 21.

In early 1992, during the winter of Plaintiff's ninth grade year, Plaintiff alleges "McGrew pushed him against the wall in the study hall building, ordered [Plaintiff] to put his hands over his head so he could tuck in his shirt, violently tucked in his shirt, put his hands into [Plaintiff's]

---

[2] Where facts are undisputed, the Court cites only to Plaintiff's Local Rule 56(a)2 statement.

underwear, grabbed [Plaintiff's] penis, and hissed, 'Do you want me to rip your dick off?'" *Id.* ¶ 26.  The parties refer to this incident as the "study hall incident."

A few weeks after the study hall incident, Plaintiff alleges another incident, which the parties have labeled the "office incident."  Plaintiff alleges that "while he was in McGrew's office, McGrew cornered [him], pushed him against the corner of the desk, stated he was going to tuck in his shirt, reached to grab [Plaintiff's] underwear, grabbed [Plaintiff's] penis, and demanded, 'Who the fuck did you tell? Who are you talking to?'"  *Id.* ¶ 39.

Plaintiff graduated from the ninth grade and Rumsey Hall School in the spring of 1992.  *Id.* ¶ 50.

### B.  Defendant's Knowledge of Alleged Abuse by McGrew

#### *1.  Reports by Plaintiff*

It is undisputed that Plaintiff never reported any of the dorm room incidents to Defendant's staff members when it was allegedly ongoing.  *Id.* ¶¶ 22, 24.  Plaintiff did attempt to speak about it to another student in his dorm, whom he suspected McGrew would also molest, but the student responded that "there was nothing happening," *id.* ¶ 23.

As to the study hall incident, Plaintiff reported this incident to his advisor Matthew Hoeniger, *id.* ¶¶ 9, 28, who immediately reported the incident to Thomas Farmen, the headmaster of the school between 1985 and 2016, *id.* ¶¶ 7, 31.  The next day, at the request of Farmen, Hoeniger relayed Plaintiff's report to assistant headmaster Rick Spooner, who was responsible for investigating reports of this nature and designated by the school as a mandatory reporter to the Department of Children and Families.  Pl.'s Add'l Mat. Facts ¶¶ 11–12; Hoeniger Aff., ECF No. 65-4 ¶ 16.  McGrew and Farmen were also present at this meeting.  Pl.'s Add'l Mat. Facts ¶ 12;

Hoeniger Dep., ECF No. 110-5 at 34:17–35:25.  Hoeniger also spoke to his wife Amy Hoeniger, who worked at the school, about Plaintiff's report.  Pl.'s L.R. 56(a)2 St. ¶¶ 10, 32.

The exact content of Plaintiff's report is disputed.  Hoeniger represents that Plaintiff told him "McGrew was wrestling with [Plaintiff] in the front of the study hall classroom, and as they were doing so, [McGrew] put his hands down [Plaintiff's] pants and touched his penis."  Hoeniger Aff., ECF No. 65-4 ¶ 14.  According to Hoeniger, Plaintiff did not inform him of any other incidents with McGrew.  *Id.* ¶ 15.  Plaintiff claims, however, that he told Hoeniger "about what happened in seventh and eighth grade too because [Hoeniger] asked if this was the only thing that ever happened to me."  Davis Dep., ECF No. 65-7 at 144:23–145:1.  Amy Hoeniger only remembers that her husband told her "McGrew put his hands in Tim's pants" and it was "one time."  A. Hoeniger Dep., ECF No. 65-8 at 15:2–9.  Farmen's recollection of the report Hoeniger relayed to him is that Plaintiff was "in the study hall building during the school day during school hours with teachers and students present" when "McGrew tucked in [Plaintiff's] shirt and accidentally grazed his penis on the outside of his underwear."  Farmen Aff., ECF No. 65-3 ¶ 14.

The parties also dispute whether the school investigated Plaintiff's report; the school avers that, if any investigation was done by Spooner, it revealed that McGrew's conduct amounted to only "an accidental grazing of [Plaintiff's] penis outside of his underwear that was not sexual in nature."  Def.'s L.R. 56(a)1 St. ¶ 36.  Plaintiff contends there is no evidence an investigation took place.  Pl.'s L.R. 56(a)2 St. ¶ 36.

Finally, as to the last incident in McGrew's office, Plaintiff did not report this incident to anyone while he was a student at the school, *id.* ¶ 41, though he claims to have slept with a knife the rest of the year for protection against McGrew or for purposes of potentially committing suicide.  Davis Dep., ECF No. 65-7 at 139:13–15.

4

## 2. *Other Alleged Reports*

In June of 1994, Farmen authored a memorandum that discusses McGrew's demeanor and conduct. Ponvert Aff., Ex. K, Farmen June 8, 1994 Memo., ECF No. 110-11.[3] That memorandum describes McGrew as "an unusually warm human being, given to physical displays of affection." *Id.* at 2. McGrew would "hug a student on occasion and tickle them playfully, the young boys, that is." *Id.* McGrew's "affection [was] returned by students in a spontaneous manner, in public settings," and he is "certainly the best liked by the students." *Id.*

In the 1994 memorandum, Farmen states that two incidents of inappropriate physical contact by McGrew were reported to Farmen in January of 1993 and the spring of 1994; these incidents were, in turn, reported to the school's Board of Trustees. *See id.* Farmen's memorandum states that the January 1993 report involved a thirteen-year-old boy complaining to a dorm parent about feeling uncomfortable with McGrew giving him a back and stomach rub when the boy was not feeling well. *Id.* at 2. Farmen states he later had conversations with the boy's parents and with McGrew, which caused him to conclude that "no sexual contact had been alleged or occurred,"

---

[3] Plaintiff filed all of his supporting exhibits, and significant portions of his opposition brief, under seal because they concern documents previously marked "confidential" or "for attorney's eye's only" by Defendant. The Court allowed Plaintiff to make these filings under seal pursuant to Paragraph 16 of the Stipulated Protective Order, and "subject to reconsideration after the Court reviews the filings at issue." ECF No. 101. The Court now notes that, "[e]ven if the parties were able to agree to which materials should be deemed 'confidential,'" in the course of discovery, "in order to seal, it remains incumbent on the court to make 'particularized findings demonstrating that sealing is supported by clear and compelling reasons and is narrowly tailored to serve those reasons.'" *Travelers Indem. Co. v. Excalibur Reins. Corp.*, No. 3:11-CV-1209 (CSH), 2013 WL 4012772, at *11 (D. Conn. Aug. 5, 2013) (quoting in part D. Conn. L.R. 5(e)(3)). The Court cannot find that the sealing the 1994 Farmen memorandum, which contains highly relevant factual descriptions of McGrew's demeanor and conduct, is warranted. It, and the other documents the Court *sua sponte* unseals through this ruling, are "judicial documents" that should be presumptively public. *See Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016). The Court has accommodated the countervailing consideration of privacy for alleged victims of sexual abuse by omitting alleged victims' names and identifying information that could "allow a reasonable person who does not have personal knowledge of the relevant circumstances to identify with reasonable certainty individuals who have alleged that they were" victims of sexual abuse while students, in line with the protective order governing this case. *See* Protective Order, ECF No. 96 at 1. The Court will therefore *sua sponte* unseal the entire 1994 Farmen memorandum exhibit, and others, by citing to them in this Ruling. *See* D. Conn. L.R. 5(e)(3). Plaintiff's motion for articulation and clarification of its request for unsealing, ECF No. 123, is denied as moot. As noted below, Plaintiff shall file new versions of its filings with the information that has been *sua sponte* unsealed in this Ruling unredacted.

and that "[b]asically, Mr. McGrew's problem is that he did not grasp that what would be an appropriate physical act for a father toward his son is not necessarily appropriate for a teacher toward a student." *Id.* The memorandum further documents that McGrew met for several months with the school's psychiatrist, to "understand[ ] what was and was not an appropriate level of physical contact with students of varying ages," until June of 1993, "at which time no further visits were deemed necessary." *Id.* Farmen decided not to dismiss McGrew after the incident; he advised McGrew, however, "that the high degree of physical contact he instigates with students *puts him and the school in a potentially high risk position.*" *Id.* (emphasis added).

The memorandum next discusses a "similar incident" occurring with McGrew in about May of 1994, in which a nine-year-old student reported directly to Farmen that he was "uncomfortable with the way Mr. McGrew was tickling him in front of other students." *Id.* McGrew again spoke to the boy, his parents, and the school's psychiatrist, and concluded "no sexual contact had been alleged or occurred." *Id.* Farmen again decided not to dismiss McGrew after the second incident, in light of his "stature as a teacher" and that his "level of physical contact with the older students had diminished" since the January 1993 complaint. *Id.* at 3. Farmen documented that the Board of Trustees concurred with his conclusions. *Id.*

While Defendant contends that the January 1993 and spring 1994 incidents recounted in Farmen's 1994 memorandum are the first reports the school received of allegedly inappropriate conduct by McGrew by someone other than Plaintiff, Plaintiff contends the school actually received a report of such conduct from another student's parent in or around the fall of 1991, while Plaintiff was still a student at the school. According to records held by the school's insurer, including a recorded statement of the other student ("Student A"), Student A reported that when he sought help from McGrew with math, McGrew directed him to come to McGrew's office after

6

school for help.  Ponvert Aff., Ex. J, Utica Ins. Co. Recorded St., ECF No. 110-10 at 8; *id.*, Utica

Inc. Claim Log, ECF No. 110-10 at 18.[4]  McGrew then had Student A "sit on [McGrew's] lap,"

and McGrew "began to tickle [Student A's] sides," and then "put [his] hands down [Student A's]

pants [and] grabbed [Student A's] penis."  Utica Ins. Co. Recorded St. at 8; *see also id.* at Utica

Ins. Claim Log at 18 (stating this event occurred "during the fall of [the student's] 6th grade year

in 1991").  The insurance records reflect that Student A's father called headmaster Farmen to

report the abuse that night or the next day.  *See* Utica Ins. Co. Recorded St. at 8 (Student A relaying

that he called his parents and that his parents quickly called the school and spoke to Farmen), Utica

Ins. Claim Log at 18 (similar).

Defendant disputes the timing of the Student A's parent's report, specifically denying it

took place before the "study hall incident" with Plaintiff, which Plaintiff says occurred in the spring

of 1992.  At oral argument, Defendant represented that Farmen does not recall the report discussed

in the insurance records, and instead recalls that the first report he received of McGrew's alleged

misconduct with a student other than Plaintiff was the one in January of 1993 that he discussed in

his 1994 memorandum.  Defendant concedes there is a genuine dispute of fact as to the timing and

content of Student A's parent's report.[5]

---

[4] Plaintiffs similarly filed this exhibit under seal and redacted its description in his opposition brief.  For the reasons
set forth in footnote three, the Court will *sua sponte* unseal pertinent portions of this exhibit as well by citing it in this
Ruling.
[5] Defendant fails to provide an explanation as to why, if it is only denying the report took place before the winter of
1992, it nonetheless stated in its Local Rule 56(a)1 Statement that "[o]ther than Davis' [eventual] Report to Hoeniger,
no other students had complained or raised concerns about inappropriate behavior or conduct by McGrew while Davis
was a student at RHS."  D.'s L.R. 56(a)1 St. ¶ 46.  This statement of fact was based on an affidavit submitted by
Farmen in connection with Defendant's motion.  ECF No. 65-3.  At oral argument, the Court questioned Defendant's
counsel about the veracity of Farmen's affidavit, which counsel helped draft, given that the insurance company's
records state Student A's parent's report was made in the fall of 1991; counsel stated that Farmen *could not remember*
any such parent complaint occurring while Plaintiff was a student at the school, making his statement that no parents
had complained in this timeframe accurate because he attested the facts in his affidavit were true "to the best of his
knowledge and belief."  *Id.* at 6.  Farmen's affidavit was, at best, confusing on this point.

### 3. Additional Relevant Facts

Moving forward, in 1999 and 2000, McGrew sent a series of pornographic emails to former students, Spooner, and at least one other staff member.  Pl.'s Add'l Mat. Facts ¶ 44.  McGrew resigned in June of 2000.  *Id.* ¶ 24.[6]

Almost thirty years after Plaintiff graduated, Defendant issued a letter to members of its community containing findings from an investigation into past sexual misconduct at the school.  Pl.'s. Add'l Mat. Facts ¶ 36.  Specifically, Defendant identified that it had entered three confidential settlement payments with alumni who alleged sexual abuse by McGrew in the 1990s.  *See* Ponvert Aff., Ex. O, Rumsey Hall May 3, 2019, Letter to Members of Rumsey Community, ECF No. 110-15.[7]  It also identified two other instances of sexual misconduct by two different faculty members in the late 1960s and 1970s.  *Id.*  Through the letter, the school invited others to come forward.  *Id.*  Plaintiff contends that, to date, there is evidence that McGrew may have sexually abused at least nine boys in the early 1990s, in addition to Plaintiff.  Pl.'s Add'l Mat. Facts ¶¶ 19–20.[8]

## II.   PROCEDURAL BACKGROUND

In December of 2020, Plaintiff brought a four-count complaint against Defendant for negligence, recklessness, negligent infliction of emotional distress, and intentional infliction of emotional distress.  *See generally* Compl., ECF No. 1.  Discovery was set to be completed on August 19, 2022, ECF No. 53.

In October of 2022, Defendant filed its present motion for partial summary judgment, claiming there is no genuine dispute it did not have notice McGrew would abuse, or had a

---

[6] The Court *sua sponte* unseals the reference to McGrew's resignation and these emails in Plaintiff's Statement of Additional Material Facts.

[7] Plaintiff filed this letter under seal, but it is publicly available on Defendant's website.  *See* May 3, 2019, Letter to Members of Rumsey Community, https://www.rumseyhall.org/uploaded/Letter5.3.pdf (last accessed Sept. 28, 2023). The letter is therefore *sua sponte* unsealed.

[8] The Court *sua sponte* unseals this portion of Plaintiff's Additional Material Facts.

propensity to abuse, Plaintiff or any other student prior to the winter of 1992, when Plaintiff first reported McGrew after the study hall incident.  In Defendant's view, its liability should be limited, at most, to the last incident in McGrew's office; Defendant claims it should not be liable for any of the dorm room incidents occurring in the 1989-1990 and 1990-1991 academic years, nor the study hall incident which resulted in Plaintiff's report to Hoeniger, because Defendant did not have notice of McGrew's alleged propensity to abuse students before those incidents occurred.

Plaintiff sought an extension of time to file its opposition under Federal Rule of Civil Procedure 56(d), contending that, because Defendant was delayed in completing its privilege log, Plaintiff could not assess whether it needed to file a motion to compel to an outstanding interrogatory request, and so "[could not] present facts essential to justify its opposition."  ECF No. 66 at 7–8 (quoting Fed. R. Civ. P. 56(d)).  The Court granted Plaintiff's Rule 56(d) motion, and Defendant was ordered to produce the privilege log by December 21, 2022, which it did.  *See* ECF Nos. 69, 71, 73, 74.  Plaintiff subsequently filed his anticipated motion to compel, seeking documents from Defendant and the law firm Shipman & Goodwin LLP, which conducted an internal investigation for the school.  The motion was granted in part.  *See* ECF No. 93.

Plaintiff then filed his opposition to the motion for partial summary judgment, with the benefit of evidence that was not in the record at the time Defendant's filed its motion:  particularly, the report allegedly made against McGrew by Student A's parent in the fall of 1991, predating Plaintiff's report to Hoeniger in the winter of 1992 after the study hall incident.  *See* ECF No. 106 at 28.  In its reply, Defendant concedes there is a genuine dispute as to whether it was on notice in

the fall of 1991, and so now only seeks partial summary judgment as to the dorm room incidents that took place during the 1989-1990 and 1990-1991 academic years.  ECF No. 112 at 1 n.2.[9]

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a) also allows parties to move for partial summary judgment.  *See* Fed. R. Civ. P. 56(a) (stating a party may "move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought"); *see also LEGO A/S v. Best-Lock Construction Toys, Inc.*, 404 F. Supp. 3d 583, 626 (D. Conn. 2019).

A disputed fact is material only where the determination of the fact might affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  With respect to genuineness, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing there is no genuine issue of material fact in dispute will be satisfied if the movant can point to an absence of evidence to support an essential element of the non-moving party's claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The movant bears an initial burden of "informing the district court of the basis for its motion, and identifying  those  portions  of  'the  pleadings,  depositions,  answers  to  interrogatories,  and

---

[9] Again, Defendant fails to provide an explanation as to why it represented in its Local Rule 56(a)1 Statement that "[o]ther than Davis' [eventual] Report to Hoeniger, no other students had complained or raised concerns about inappropriate behavior or conduct by McGrew while Davis was a student at RHS," Def.'s L.R. 56(a)1 St. ¶ 46, when it had evidence of this fall 1991 report in its possession.

admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  A movant, however, "need not prove a negative when it moves for summary judgment on an issue that the [non-movant] must prove at trial.  It need only point to an absence of proof on [the non-movant's] part, and, at that point, [the non-movant] must 'designate specific facts showing that there is a genuine issue for trial.'" *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 324).  The non-moving party, to defeat partial summary judgment, must come forward with evidence that would be sufficient to support a jury finding in his or her favor.  *Anderson*, 477 U.S. at 249.  If the non-movant fails "to make a sufficient showing on an essential element of [their] case with respect to which [they have] the burden of proof," then the movant will be entitled to judgment as a matter of law.  *Celotex Corp.*, 477 U.S. at 323.

In considering a motion for complete or partial summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation and internal quotation marks omitted).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

## IV.    DISCUSSION

Defendant has moved for partial summary judgment on all of Plaintiff's claims, contending that there is no genuine dispute of material fact that Rumsey Hall School did not have notice McGrew would abuse, or had a propensity to abuse, Plaintiff or any other student prior to Student A's parent's report of misconduct by McGrew to the fall of 1991.  In response, Plaintiff argues notice is not a required element of his claims under *Saint Francis*, and that there are genuine

disputes of material fact pertinent to his *Saint Francis* theory of liability.  In the alternative, Plaintiff argues there is also a genuine dispute as to whether Defendant had notice prior to the fall of 1991.

The Court first finds, counter to Defendant's argument in reply, that Plaintiff adequately pleaded a non-notice *Saint Francis* theory of liability in his compliant, such that he is not precluded from pursuing it now.  There are genuine disputes of material fact whether *Saint Francis*'s two exceptions to notice apply.  Defendant's motion for partial summary judgment is therefore denied to the extent it seeks to eliminate liability for the dorm room incidents entirely.  *See* ECF No. 112 at 10.  The Court also finds there is a genuine dispute as to whether Defendant was on notice prior to the fall of 1991, so Defendant's motion is denied to the extent it seeks partial summary judgment on that particular factual issue as well.

A.  Plaintiff's *Saint Francis* Theory of Liability

Plaintiff has alleged claims for negligence, recklessness, negligent infliction of emotional distress, and intentional infliction of emotional distress.  To put Defendant's notice argument in context, it is important to first explain the elements of Plaintiff's various causes of action.

To succeed on a negligence claim, a plaintiff typically must show "duty; breach of duty; causation; and actual injury." *Doe v. Hartford Roman Cath. Diocesan Corp.*, 317 Conn. 357, 373 (2015) (citation omitted).  The "threshold inquiry" under the "duty" element "has always been whether the specific harm alleged by the plaintiff was *foreseeable*": otherwise stated, "would the ordinary [person] in the defendant's position, *knowing what he knew or should have known*, anticipate that harm of the general nature of that suffered was likely to result?"  *Id.* at 373–74 (emphasis added) (citation omitted).

To succeed on a recklessness claim, a plaintiff must show that a defendant made "a conscious choice of a course of action either *with knowledge* of the serious danger to others involved in it or *with knowledge of facts which would disclose this danger to any reasonable man*"; but the defendant must recognize that its conduct involves a "risk substantially greater than that which is necessary to make" the conduct negligent. *Id.* at 382 (emphasis added) (citation omitted). Recklessness is "more than negligence," and more, even, than "gross negligence." *Id.*

As for negligent infliction of emotional distress, a plaintiff must show that "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was *foreseeable*; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." *Hall v. Bergman*, 296 Conn. 169, 183 n.8 (2010) (emphasis added) (citation omitted).

Last, to prevail on a claim for intentional infliction of emotional distress, a plaintiff must show "(1) that the actor *intended* to inflict emotional distress *or that he knew or should have known* that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Appleton v. Bd. of Educ. of Town of Stonington*, 254 Conn. 205, 210 (2000) (emphasis added) (citation omitted).

Defendant argues that actual or constructive notice (i.e., that Defendant knew or should have known about the risk of harm to Plaintiff) is a required element of each of Plaintiff's claims, and that because Plaintiff has failed to put forth evidence of notice prior to the fall of 1991, partial summary judgment is appropriate on all claims. *See* ECF No. 65-1 at 12. Defendant is correct that, in general, "a defendant is not responsible for anticipating the intentional misconduct of a third party . . . unless the defendant knows or has reason to know of the third party's criminal

propensity." *Saint Francis*, 309 Conn. at 172. *Saint Francis* modified this general rule, however. In *Saint Francis*, the plaintiff proceeded to trial on claims for negligent supervision and breach of a special duty of care to children in one's custody against a hospital that employed a doctor who sexually abused minor patients while conducting a "child growth study" in the 1960s. *Id.* at 149–50. The court held that a plaintiff can establish a "duty" even if the defendant neither knew nor should have known of the third party's criminal propensity, under two circumstances: (1) "the defendant's conduct creates or increases the risk of a particular harm and is a substantial factor in causing that harm," and the "harm that occurred is within the scope of the risk created by the defendant's conduct," or (2) "the defendant otherwise has a legally cognizable duty to aid or to protect another person," and "the harm that occurred . . . could have been anticipated in light of the defendant's duty to protect." *Id.*; *see also Doe v. Boy Scouts of Am. Corp.*, 323 Conn. 303, 316–18 (2016) (adopting and applying *Saint Francis* theory of liability).[10]

Defendant, without citing any law in support, argues that Plaintiff's pleadings and conduct in discovery show he was proceeding solely on a notice theory of liability; therefore, Defendant argues, Plaintiff should be precluded from pursuing a non-notice *Saint Francis* theory now. The Court finds that Plaintiff's complaint adequately pleaded both theories. Although the gravamen of Plaintiff's complaint is that Defendant was on notice of the risk McGrew posed to students, *see* ECF No. 1 ¶¶ 11, 15, 17, 45, 46, 48, 58 (stating Defendant "knew," "should have known," had "reasonable cause to believe," and had "actual and constructive knowledge"), Plaintiff's allegations of notice also tend to show that Defendant's conduct created or increased the risk of harm to him (*Saint Francis*'s first exception to notice) and that the harm which occurred could

---

[10] The Connecticut Supreme Court has not addressed whether *Saint Francis*'s exceptions apply beyond claims for negligence and negligent supervision. As Defendant has not argued that *Saint Francis*'s exceptions are limited to claims alleging negligent behavior, the Court need not reach this issue for purposes of deciding this motion.

14

have been anticipated in light of the school's duty to protect him (the second).  For example, the notice-based allegation that Defendant "knew that McGrew was inappropriately physically intimate with the boys in his care," *id.* ¶ 12, along with the allegation that "McGrew's apartment was in the same house as the dorm where [Plaintiff] resided," *id.* ¶ 25, could plausibly show that Defendant, by placing McGrew in the role of dorm parent, increased the risk of harm to Plaintiff, and that his residential proximity to students was a substantial factor in causing that harm, which was within the scope of risk that Defendant created.  *See Saint Francis*, 309 Conn. at 149–50. Moreover, the complaint alleges that Defendant failed to implement and enforce policies and practices intended to protect students from sexual abuse by staff, thereby increasing the risk that students would be sexually abused.  *Id.* ¶ 19.  Further, the complaint alleges that Defendant had an affirmative "duty to protect," relevant to the second *Saint Francis* exception.  For instance, the complaint alleges how, during Plaintiff's attendance, "Connecticut law imposed upon the school a mandatory duty to report to child welfare authorities if there was reasonable cause to believe that one or more students were being or had been sexually abused by an employee of the school."  *Id.* ¶ 13; *see also* ¶¶ 20, 36 (identifying Defendant's "duties to protect and warn vulnerable minor male students in its care and custody" and "mandatory reporting obligations").  Defendant also conceded at oral argument that it has a duty to protect its students.  Plaintiff's complaint can fairly be read to suggest that the alleged sexual abuse that occurred could have been anticipated by Defendant, in light of its duty to protect Plaintiff.

The Court is satisfied that the complaint provides the "fair notice" required under Federal Rule of Civil Procedure 8 such that Plaintiff may pursue either theory.  Plaintiff need not broadcast its strategy at the pleading stage, and need not spell out each legal theory on which he might rely to prove his claims, when varying theories can be supported by his factual allegations.  *See Roe v.*

*Red Balloon Day Care Ctr., Inc.*, No. TTD-CV-22-5015602-S, 2022 WL 17959431, at *3 (Conn. Super. Ct. Dec. 23, 2022) ("The defendant's argument that the plaintiff's complaint needs to expressly allege a deprivation of self-protection and foreseeability of harm is unavailing. The plaintiff's complaint would be sufficient if those allegations are implied by way of the other factual allegations in the complaint.").  Plaintiff's notice allegations do not foreclose a *Saint Francis* theory; indeed, other complaints where the plaintiff proceeded on a *Saint Francis* theory are replete with allegations of notice as well.  *See, e.g.*, *Hotchkiss Sch.*, 2019 WL 1099027, at *1 (describing complaint's allegations of notice before applying *Saint Francis*); *Givens v. St. Adalbert Church*, No. HHDCV126032459S, 2014 WL 4413233, at *5 (Conn. Super. Ct. July 25, 2014) (describing complaint allegations that Defendant "knew, or should have known, that [priest] had tendencies to engage in improper conduct with minors" before applying *Saint Francis*).  Defendant has pointed to no specific examples of Plaintiff's conduct in discovery that suggest Plaintiff was foreclosing a non-notice theory, and has not argued that it has been unfairly prejudiced by this "surprise" theory.  As Defendant has provided no authority for the proposition that Plaintiff should be precluded from arguing a *Saint Francis* theory at this stage, the Court declines to impose this bar. [11]

### B.  Genuine Disputes of Material Fact Under *Saint Francis*

The Court holds that Defendant's motion must be denied to the extent it seeks to preclude all liability for the dorm room incidents prior to the fall of 1991 because Plaintiff alleged a *Saint*

---

[11] Defendant cited one case at oral argument, *Spencer v. Connecticut*, 560 F. Supp. 2d 153 (D. Conn. 2008), that did not appear in its briefing.  The Court need not consider a case raised for the first time at oral argument.  *Kosachuk v. Selective Advisors Grp., LLC*, 827 Fed. App'x 58, 62 (2d Cir. 2020) (summary order) (citing cases to support the proposition that the appellant waived or forfeited an argument raised in oral argument by failing to raise it in his brief). In any event, however, *Spencer* is factually distinguishable, as it involved a *pro se* prisoner's assertion of a new *claim* at summary judgment, not a different theory of proof as to an existing claim.  *Id.* at 160.  Moreover, that the plaintiff in *Miranda v. Westover School Inc.*, No. 3:20-CV-123 (CSH), 2022 WL 4367605 (D. Conn. Sept. 21, 2022), who was represented by Plaintiff's counsel here, did not pursue a *Saint Francis* theory in that case is irrelevant to whether the theory was properly pleaded here.

*Francis* theory of liability, and there is a genuine dispute of material fact about whether either of *Saint Francis*'s two exceptions should apply.

Initially, the Court notes that it is well-established that "negligence considerations" involve "factual determinations best decided by a jury." *Hotchkiss Sch.*, 2019 WL 1099027 at *7; *see also id.* at *13–14.   Indeed, *Saint Francis* recognized that whether a defendant is liable for the intentional misconduct of a third party "is fact intensive, and its resolution will depend on the nature and gravity of the risk posed by the potential misconduct of the third party," among other factors.   *Saint Francis*, 309 Conn. at 180.   As to recklessness, the "sort of fact-intensive determination" about whether the defendant's conduct amounts to "'aggravated negligence'" and is "'more than mere thoughtlessness or inadvertence, or simply intention'" is the proper province for a jury. *Hotchkiss*, 2019 WL 1099027 at *12 (quoting, in part, *Craig v. Driscoli*, 262 Conn. 312, 342 (2003)).   Similarly, factual questions are relevant to the elements of an intentional infliction of emotional distress claim, including the intent of the defendant, whether the defendant's conduct caused the plaintiff's distress, and whether such distress was sufficiently severe. *See Appleton*, 254 Conn. at 210.   And, of course, summary judgment must be denied when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Here, there are genuine disputes of material fact relevant to Plaintiff's *Saint Francis* theory that preclude partial summary judgment.   First, there is a genuine dispute whether Defendant's conduct may have "create[d] or increase[d] the risk of [ ] harm [to Plaintiff] and [wa]s a substantial factor in causing that harm," and that the "harm that occurred" was "within the scope of risk created by [Defendant's] conduct." *Saint Francis*, 309 Conn. at 172.   To start, there is evidence McGrew was "an unusually warm human being, given to physical displays of affection."  Pl.'s Add'l Mat.

Facts ¶ 37.  While this is documented in Farmen's 1994 memorandum, a jury could infer that Defendant was aware of this aspect of McGrew's nature earlier, as he was hired in 1988. Defendant hired McGrew as dean of students and then put him in the additional positions of teacher, coach, and dorm parent.  In these roles, McGrew could meet with students in his office one-on-one, and there were apparently no policies prohibiting him from meeting with students inside his apartment, located inside the seventh-grade dorm.  Hoeniger Dep., ECF No. 110-5 at 55–56.  A reasonable jury could therefore find that providing McGrew with these opportunities to engage with minors in an unsupervised manner gave him an opportunity to engage in the alleged abuse.  *See Boy Scouts of Am. Corp.*, 323 Conn. at 327 (holding that a reasonable jury could find that gatherings of minors in secluded locations for extended periods of time "provide participants with a greater opportunity to engage in sexual abuse").  Similarly, where a school "d[oes] not have formal rules, training, and procedures related to sexual misconduct between teachers and students," such as Defendant's lack of dorm-parent policies, "a reasonable jury could determine that [the school] could be liable for increased risk of sexual misconduct" under *Saint Francis*.  *Hotchkiss Sch.*, 2019 WL 1099027, at *8.

Plaintiff has also pointed to evidence showing that Defendant may have created or increased the risk of harm to Plaintiff by maintaining a culture that facilitated McGrew's abuse. There is evidence suggesting that the school's very own mandated reporter, Spooner, either did not investigate Plaintiff's report or minimized it.  Similarly, as of 1994, Defendant understood that McGrew placed the school in a high risk position, but kept McGrew on staff because there was a perception he was otherwise liked by students.  Ponvert Aff., Ex. K, Farmen June 8, 1994 Memo., ECF No. 110-11 at 2.  By 1999, there is evidence McGrew felt so comfortable at the school that he sent Spooner, the school's mandated reporter, as well former students, pornographic emails

from his school email account.  Pl.'s Add'l Mat. Facts ¶ 44.  There is also evidence that the school settled lawsuits with other former students who had alleged abuse by McGrew and sought to keep those settlements confidential.  *See* Ponvert Aff*., Ex. J, at 1; *id.* Ex. R; *id.* Ex. S.  While evidence of acts long after the alleged dorm room incidents may carry less persuasive value, a reasonable jury could assess it alongside other evidence, such as Defendant's alleged failures to institute protective policies and procedures—and to abide by the state mandatory reporter statute—to find Defendant created an environment that enabled sexual abuse *before* the first documented report against McGrew in or around the fall of 1991.  That Plaintiff did not present an expert witness on the relevant standard of care for a boarding school at the time is an argument Defendant can make to the jury, but this is not an argument that requires granting Defendant partial summary judgment.

Under the second *Saint Francis* exception, Defendant concedes it had a legally cognizable duty to protect Plaintiff, and there is a genuine dispute as to whether the "harm that occurred . . . could have been anticipated in light of the defendant's duty to protect," for similar reasons.  *Saint Francis*, 309 Conn. at 172; *see also Hotchkiss Sch.*, 2019 WL 1099027, at *6 (noting affirmative duty to protect student from sexual assault under Connecticut law).  As noted above, there is evidence Defendant was generally aware that McGrew displayed inappropriate physical affection towards students at least as of 1994, two years after Plaintiff graduated.  Further, Plaintiff identifies evidence showing that Defendant may have maintained a culture that allowed McGrew's alleged abuse to go undetected.  A reasonable jury may find, after considering all the evidence, that Defendant could have anticipated McGrew's actions, particularly in light of its duty to protect Plaintiff and other students.

Defendant seeks to distinguish *Saint Francis*, *Boys Scouts*, *Hotchkiss*, and *Roe v. Big Bros. Big Sisters of Am. Corp.*, No. HHD-CV-20-5064185-S, 2023 WL 2010745 (Conn. Super. Ct., Feb.

3, 2023), because even in those cases, it claims there was "[1] evidence that the defendants had notice of the propensities of the abuser and/or [2] notice that abuse had existed within their institution" before the plaintiff came into the defendant's care. *See* ECF No. 112 at 7–8. It is true McGrew's hiring process did not reveal that he had any propensities to engage in sexual abuse, and so the harm could not have been anticipated on that basis alone. Pl.'s L.R. 56(a)2 St. ¶ 15. But, as noted above, the school was generally aware of McGrew's propensity for hugging and tickling young boys at least as of June of 1994, and a reasonable jury could find that this reputation dated back to McGrew's hiring in 1988. Second, counter to Defendant's suggestion, the school acknowledged in its letter to the community that there *were* past instances of sexual misconduct at Rumsey Hall prior to Plaintiff's enrollment. *See* Ponvert Aff., Ex. O, ECF No. 110-15 (describing two different instances of sexual misconduct by two different faculty members in the later 1960s and 1970s).

More fundamentally, cases like this one can proceed on both a notice and non-notice theory, and facts indicating notice are highly probative in proving either of *Saint Francis*'s two exceptions. For example, after Plaintiff graduated Rumsey Hall, at least nine other individuals have come forward stating they were sexually abused by McGrew in the early 1990s. Pl.'s Add'l Mat. Facts ¶ 19. A reasonably jury could conclude that these numbers, in addition to other facts (some of which may relate to notice), show Defendant could have anticipated the alleged abuse absent a showing of actual or constructive notice. But it is not necessary for Plaintiff to actually prove notice, as requiring this would swallow the *Saint Francis* exception.

In sum, there are genuine disputes of material fact as to whether (1) Defendant's conduct "create[d] or increase[d] the risk of [ ] harm and [wa]s a substantial factor in causing that harm," and that the "harm that occurred" was "within the scope of risk created by the defendant's

conduct," and whether (2) Defendant had "a legally cognizable duty to aid or to protect" Plaintiff, and the "harm that occurred . . . could have been anticipated in light of the defendant's duty to protect." *Saint Francis*, 309 Conn. at 172. These findings are necessary to *Saint Francis* liability and distinguish the test from one of strict liability. *See* ECF No. 112 at 10. Defendant's motion for partial summary judgment, to the extent it seeks to avoid all liability for the dorm room incidents prior to the fall of 1991, is denied as to Plaintiff's *Saint Francis* theories of proof.

        C.  <u>Genuine Disputes of Fact Regarding Notice</u>

Although *Saint Francis* precludes granting Defendant's motion to the extent it seeks to eliminate liability for the dorm room incidents, Defendant's motion is still live on the specific issue of whether it had notice prior to the fall of 1991. For similar reasons as explained above, the Court finds there is a genuine dispute of material fact concerning notice prior to the fall of 1991, and so denies the motion for partial summary judgment on this basis as well.

Plaintiff has identified evidence that would support a reasonable jury finding that Defendant knew or should have known McGrew had a propensity to engage in sexual abuse. To start, there is the evidence that McGrew, who was a dorm parent and would spend time alone with students after hours, was known to be "an unusually warm human being, given to physical displays of affection" including hugging and tickling. Ponvert Aff., Ex. K, Farmen June 8, 1994 Memo., ECF No. 110-11 at 2. At one point, McGrew even met with a school psychiatrist for several months to "understand[ ] what was and was not an appropriate level of physical contact with students of varying ages." *Id.* A reasonable jury could infer McGrew's reputation and tendencies predated the fall of 1991.

 Further, as described above, there is evidence that Defendant may have maintained a culture throughout the 1990s that facilitated abuse. There is evidence that the school's mandated

reporter, Spooner, either did not investigate Plaintiff's report regarding the study hall incident or minimized it.  A reasonable jury could infer from this alleged failure to investigate and Defendant's alleged failures to implement and adhere to policies designed to protect children from abuse that Defendant *should have* known about McGrew's alleged abuse.  Similarly, there is evidence that Defendant was unwilling to remove McGrew from his position because of his popularity with students, Ponvert Aff., Ex. K, Farmen June 8, 1994 Memo., ECF No. 110-11 at 2, until he went as far as sending Spooner and former students pornographic emails from his school account.  Pl.'s Add'l Mat. Facts ¶ 44.  Drawing all inferences in Plaintiff's favor, this evidence could support a jury finding of constructive, if not actual, notice.

The cases cited by Defendant do not undermine this conclusion.  They principally deal with situations where the only evidence in the record is that the teachers at issue may have acted in a flirtatious manner with older students, which has been deemed insufficient to put a school on notice.  For instance, the plaintiff in *Miranda* relied on the deposition testimony of two former school staff members stating that the teacher at issue was thought to be "creepy" and was reported twice to the athletic director for "hanging around" after sports practices and inviting high school girls to get pizza and ice cream.  2022 WL 4367605, at *14, *21.  While the district court granted summary judgment in favor of the school on the ground of lack of notice, the Second Circuit very recently vacated that order.  *See Miranda v. Westover Sch., Inc.*, No. 22-2546-cv (2d Cir. Sept. 28, 2023) (summary order), ECF No. 124-1, Ex. A.  The Second Circuit held that the deposition testimony of one of the staff members noting that the plaintiff's best friend had given him the "impression that something inappropriate was happening" between the plaintiff and the teacher was alone sufficient to defeat summary judgment.  *Id.* at 4.  Drawing all inferences in favor of

Plaintiff here, the evidence the Court has described in this Ruling is likewise sufficient to defeat summary judgment in this case.

In *Doe v. Town of Madison*, 340 Conn. 1, 21, 25 (2021), the accused teacher's "flirtatious manner" of "smiling, laughing, and tossing her hair" in front of student football players while dressing in "skimpy shorts and sports bras" was "simply too far removed from any type or instance of sexual abuse to supply reasonable cause to suspect imminent risk of such abuse." Similarly, in *Doe v. City of New Haven*, 214 Conn. App. 553, 572–73 (2022), the plaintiffs only identified that the high school teacher "had collected contact information from all the students involved in the play," "sen[t] text messages to students about school related matters," had a "nontraditional [classroom] setting" with a couch and soft lighting, and "occasionally meet[ ] with a student privately in connection with a supervised extracurricular activity," which was not "inherently suspicious." In *Salamone v. Wesleyan University*, 210 Conn. App. 435, 449 (2022), the fact that the defendant, a residential advisor and college student, had previously brought three teenage boys into his dorm room, did not alone put the university on notice that sexual assaults were foreseeable. Here, by contrast, drawing all inferences in favor of Plaintiff, as the Court must at this stage, there is evidence from which a reasonable jury could conclude that Defendant should have known of McGrew's alleged propensity to abuse students, as discussed above.

In sum, for the reasons explained above, Plaintiff is entitled to have a jury determine whether Defendant had actual or constructive notice of McGrew's criminal propensities prior to the fall of 1991. Defendant's motion is therefore denied on this basis as well.[12]

---

[12] This ruling does not purport to prejudge what evidence will be admissible at trial. The Court will consider that issue in connection with adjudicating motions *in limine* before trial.

## V.      CONCLUSION

Defendant's motion for partial summary judgment is DENIED in its entirety.  Plaintiff's motion for articulation and clarification of the Court's request for unsealing is DENIED as moot. Plaintiff shall file new versions of its filings with the information that has been *sua sponte* unsealed in this Ruling unredacted by **October 6, 2023**.

The Court will schedule a conference with the parties to set dates for pretrial submissions and trial.


**SO ORDERED** at Hartford, Connecticut, this 29th day of September, 2023.


 */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE